Mary J. Hammond, adm'x v. John Paxton, Sarah S. Paxton, Chas. Toll and William C. Sterling.

*Lis pendens—Transfer from one suit to another—Abandonment of suit— Notice by possession.*

| | |
|---|---|
| 58 | 393 |
| 115 | 233 |
| 58 | 393 |
| s25NW | 321 |
| 130 | ¹334 |
| 58 | 393 |
| d158 | 654 |
| d158 | 653 |

1. A notice lis pendens affects those only who afterwards and pending suit seek to obtain interests, as purchasers or incumbrancers, in the property it refers to; and one who has begun suit to establish an equitable lien thereon upon the basis of previous dealings with defendant does not himself become thereby a purchaser or incumbrancer

within the protection of the recording laws as against any rights acquired before the notice is filed.

2. A notice lis pendens is ineffective as against a mortgagee whose mortgage antedated the notice though it was not recorded until after the notice was filed.

3. The operation of a lis pendens as notice lasts, if the suit is not abandoned, until it is closed by final decree, provided it is prosecuted with reasonable diligence and in good faith; otherwise a purchaser who has no actual notice is not affected by it.

4 The purpose of a notice lis pendens is to prevent defendant from so alienating the property in dispute as to affect complainant's rights and to bind it wherever it may be when decree is entered.

5. A suit is abandoned if before its completion another seeking the same relief is instituted and carried to decree in its place; and the effect of a lis pendens filed on the institution of the first suit is not transferred to the other. .

6. The possession and use of land by a firm is not notice to purchasers that the land is partnership assets where the record title shows that the partners are tenants-in-common owning undivided half interests therein. It is consistent with individual ownership as tenants-in-common, and will not even put purchasers upon inquiry.

7. A decree dismissing a bill of complaint can only be made by the court; it cannot be entered as of course upon default in making answer.

Appeal from Monroe. (Joslyn, J.) Oct. 28-29.—Nov. 4.

FORECLOSURE bill. Complainant appeals. Reversed.

*Ira R. Grosvenor* for complainant.

*Gouverneur Morris* for defendant Toll.

CHAMPLIN, J. The bill of complaint was filed in this case to foreclose a mortgage executed by the defendants John Paxton and Sarah S. Paxton to secure the payment of a promissory note given by John Paxton to Charles W. Hammond for borrowed money. The note and mortgage bear date the 15th day of April, 1873, and the mortgage was recorded on the 3d day of May, 1873, and covered the undivided one-half of two parcels of land in Monroe county, Michigan: one parcel known as the Jefferson S. Bond farm, containing $49\frac{31}{100}$ acres lying in the town of Raisinville ; the other,

known as the "dock property," in the city of Monroe. Toll and Sterling were made parties to the bill as subsequent purchasers or incumbrancers. Sterling claims title to a small portion by deed from Toll, and he claims title through a receiver's deed, bearing date the 28th day of June, A. D. 1878. The bill was filed July 12, 1884. For several years prior to the time the mortgage was executed, Toll and Paxton had been in partnership in the business of mining or quarrying sand suitable for use in the manufacture of glass, and in preparing the same for sale, and in selling the same. For the purpose of carrying on such business they purchased the parcels of land above mentioned, and received conveyances thereof running to them jointly. On the 24th of March, 1873, Toll filed his bill of complaint in the circuit court of Monroe county in chancery, setting forth the formation of the partnership, the carrying on of the business, and claiming that the parcels of land aforesaid were purchased for partnership purposes and were partnership assets; that the firm was largely indebted, and asking a dissolution, accounting, and winding up of the concern; and that the real estate might be considered as personalty, and subjected to the payment of the firm indebtedness. On the same day a paper, which defendant Toll claims was a notice of lis pendens, was filed in the register's office, entitled in the suit. In this notice no land is described other than by reference to certain deeds, giving the names of the parties thereto, the dates, and when and where recorded. This notice was not signed by any person, but was endorsed with the names of the counsel and solicitors of the complainant. Subpœna to appear was duly issued and served upon the defendant Paxton, who caused his appearance to be entered by his solicitor on the 24th of March, 1873, and an order requiring complainant to serve a copy of the bill in fifteen days. Proof was filed on the 9th day of April of the entry of appearance, and service of notice thereof, and of said order on complainant's solicitors, on the 24th of March, 1873, and of the failure to comply with the terms of the order; and a decree was entered by defendant's solicitor on the same day dismissing the bill of complaint for want of prosecution.

On the 18th day of April, 1873, Toll filed in the same court another bill of complaint, containing the same statements and charges as the former bill, and praying the same relief. On the same day he filed in the register's office a notice of lis pendens, containing the same description of lands by reference to recorded deeds as the other lis pendens signed by the defendant's solicitors. Subpœna to appear and answer was issued and served, and Paxton appeared and answered. On the 6th day of May, 1873, Toll made a motion in the suit which had been dismissed, based upon affidavit, to open the default and set aside the interlocutory order dismissing the bill of complaint, but it does not appear that this motion was ever argued or decided. Such proceedings were had in the second suit that a decree was entered declaring the lands in question to be partnership assets, and ordering a sale thereof for the payment of debts, which was done under the authority of the court, through its receiver, and defendant Toll became the purchaser, and upon the title thus acquired he contests the validity of the mortgage. No charge is made by Toll that the complainant's testator was guilty of any fraud in loaning the money secured thereby to Paxton, or in taking the mortgage security therefor. But he claims that Charles W. Hammond, the mortgagee, was chargeable with notice that the lands upon which he took the security were partnership assets, and as such subject to the firm debts; and that this notice was both actual and constructive. The mortgagee is sought to be affected by constructive notice by reason of the lis pendens in the first suit.

The reasoning by counsel for defendant Toll is that the order dismissing the bill of complaint did not have the effect of a decree dismissing the bill; that a bill of complaint can only be dismissed out of court by a decree of the court actually pronounced and entered, and that the interlocutory order was ineffectual for that purpose, and therefore the suit was pending at the time of the execution of the mortgage, and the lis pendens was notice to the mortgagee of the facts claimed in the bill of complaint that these lands were partnership property. Or, if he is mistaken in this position, he claims

that the suit begun on the 18th of April, and notice of lis pendens filed that day, take precedence of a mortgage not recorded until the 3d day of May. The latter position cannot be maintained. The complainant in the copartnership suit did not occupy the position of a purchaser or encumbrancer of the property within the meaning of the recording laws. His object was to have an equitable lien declared which arose antecedently out of the relation of the parties to a partnership contract. He did not, at the time of filing his bill of complaint, become a purchaser or encumbrancer for value. The notice filed at that time only affected those who should obtain interests in the property after the filing of the notice during the pendency of the suit. Hammond's interest was acquired by the execution and delivery of the mortgage three days previous to that time, and consequently he was unaffected by this notice of lis pendens.

It is claimed by the complainant in the present suit brought to foreclose the mortgage, that the notice of lis pendens filed on March 24, 1873, at the time of filing the first bill of complaint, was insufficient for two reasons: 1st. In not being signed by the complainant or his solicitors; and 2d. In not containing a description of lands to be affected thereby.

The statute provides that to render the filing of a bill constructive notice to a purchaser of any real estate, the complainant shall file for record a notice of the pendency of such suit in chancery, setting forth the title of the cause and the general object thereof, together with a description of the lands to be affected thereby. How. Stat. § 6619. The view we take of the consequences arising from the disposition of the first suit renders it unnecessary to pass upon the alleged defects in the notice filed; but, assuming it to be sufficient, we shall proceed to consider its office and effect as constructive notice in this case.

The decree dismissing the bill of complaint for want of prosecution was irregularly entered. A decree of this kind can only be made by the court. It follows that the first suit was pending at the time the mortgage was executed. But the question remains, how far the pendency of that suit is

notice that affects the rights of the mortgagee, under the facts of this case. The effect of the suit, and the filing of the requisite notice under the statute upon purchaser or mortgagors pendente lite, continues through the entire time of its pendency, and ends when the suit is actually ended by a final decree. In order to thus affect such purchaser or encumbrancer with constructive notice the suit must be prosecuted with all reasonable diligence and in good faith and without unnecessary delay, and a neglect to do so will relieve a purchaser without actual notice from the effect of the lis pendens. *Murray v. Ballou* 1 Johns. Ch. 566; *Herrington v. McCollum* 73 Ill. 476; *Petree v. Bell* 2 Bush 58; *Clarkson v. Morgan* 6 B. Mon. 441; *Watson v. Wilson* 2 Dana 406; *Price v. McDonald* 1 Md. 403; *Gibler v. Trimble* 14 Ohio 323; *Trimble v. Boothby* 14 Ohio 109. The object of the notice is to prevent the party to the litigation from alienating the property in dispute so as to affect the rights of his opponent, and to bind the property, in whosoever hands it may be, with the decree when made in the cause. Hence if the suit be abandoned, or no decree made therein, the purchaser is not affected by the filing of the notice. In this case the suit was wholly abandoned. Its object was superseded by the institution of a new suit for the purpose of obtaining the identical relief prayed for in the former suit; and no effort has been made to prosecute such suit any further since the 6th day of May, 1873. The new suit has gone to a decree, and execution has been had thereof. Under these facts it is clear that the notice filed on the 24th of March, 1873, has long since ceased to be of any efficacy as notice, and the mortgagee's rights are no longer affected thereby.

The other claim of the defendant is that the mortgagor had actual notice of the fact that the real estate was partnership property, and therefore the equity of the creditors is superior to his. The evidence relied upon to prove actual notice was that the firm quarried and used the sand upon the lands first above described, and were when the first bill of complaint was filed in the actual possession thereof, and such possession continued down to the time of the execution of

the mortgage. And this possession is relied upon as notice of the fact that the land so possessed and used was partnership property. The record title, however, disclosed that Paxton and Toll were tenants-in-common of the real estate, each owning an undivided half interest therein; and the question arises whether or not the possession and use of the real estate thus owned is not as consistent with the individual ownership of each as tenant-in-common as that it is firm property. We think it is, and that a person dealing with the individual partner had a right to rely upon the record title, and there was nothing in the fact that the firm was hauling sand from these lands which indicated that they belonged to the firm, or that was sufficient to put a purchaser upon inquiry.

It is common knowledge that partnerships are found in the possession and use of real estate, of which they either have no title, or hold the same as tenants-in-common, and that such real estate forms no part of the assets of such firms. Two or more persons may be the owners of a stone quarry, and hold undivided interests in the title thereof, and there is nothing inconsistent with such ownership for these persons to form a copartnership in quarrying and marketing the stone without putting the real estate into the partnership at all. Unless there was something in the record which indicated that the land was held by the firm as partnership property, or that the property was purchased jointly with partnership funds, a purchaser in good faith for value ought to be protected. In this case there was nothing upon the records in the office of the register of deeds to indicate or suggest that the land belonged to the partnership, and the record before us, although showing that the land was conveyed to defendants jointly, does not show that the purchase was made with partnership funds. What was said in *Reynolds v. Ruckman* 35 Mich. 80, is applicable to this case, and decisive of the point in dispute.

The decree of the circuit court is reversed with costs, and the usual decree must be entered for the foreclosure of the mortgage, as prayed for in the bill.

The other Justices concurred.