MEYERING v RUSSELL

OPINION OF THE COURT

1. TRIAL—NONJURY TRIAL—ISSUES—CLARIFICATION OF TESTIMONY—
QUESTIONING OF WITNESSES.

Sharp and frequent questioning of witnesses by the judge in a
nonjury trial was proper where the facts were confusing and
the witnesses' responses occasionally ambiguous and frequently
conflicting and where such questioning was required to clarify
the testimony.

2. LIS PENDENS—DEEDS—THIRD-PARTY PURCHASERS—EXECUTORY CON-
TRACTS—KNOWLEDGE OF ADVERSE CLAIMS.

The prevailing rule that a third-party purchaser who takes title
under an executory contract made prior to the filing of a lis
pendens is protected even though the deed is executed after the
suit is started or the lis pendens filed is often subject to
exceptions where the third-party purchaser is (1) made a party
to the suit before judgment, or (2) has knowledge of the adverse
claims before signing the executory contract, or (3) has paid
only a portion of the purchase price before the lis pendens is
filed; the most important requisite is that the third party must
have no knowledge of the adverse claim.

3. DAMAGES—TORT LIABILITY—CONTRACTS—INTERFERENCE WITH CON-
TRACTUAL RIGHTS.

Damages may be awarded where a tortious interference with
another's contractual rights occurs; malice is not a prerequisite,
and liability may be found if the interference is by inducement
or is purposeful.

REFERENCES FOR POINTS IN HEADNOTES
[1] 53 Am Jur, Trial §§ 46, 1122, 1123.
[2] 51 Am Jur 2d, Lis Pendens § 12.
[3, 4, 7] 17 Am Jur 2d, Contracts §§ 441, 521.
   22 Am Jur 2d, Damages § 83.
[5] 71 Am Jur 2d, Specific Performance §§ 1, 4.
[6] 27 Am Jur 2d, Equity §§ 138–141.

4. CONTRACTS—TORTIOUS INTERFERENCE—BREACH OF CONTRACT—EFFECTIVE PERSUASION—THIRD-PARTY PURCHASERS.

A defendant third party tortiously interfered with a plaintiff purchaser's contractual rights in a contract for sale of real estate where he effectively persuaded the owner to breach his contract to sell to the plaintiff by offering more attractive terms, where he maintained contact with the owner during the period before the date set for closing with the plaintiff and where he falsely represented to the owner that he had acquired an assignment from a land contract purchaser who was in arrears.

5. SPECIFIC PERFORMANCE—CONTRACTS—EQUITY—DAMAGES—COMPENSATION FOR DELAY.

In granting specific performance of a contract to convey land, the court will enforce the equities of the parties in such a manner as to put them as nearly as possible in the position they would have occupied had the conveyance been made when required by the contract; the rationale of compensation for delay is that the contract is being enforced retrospectively and the equities adjusted accordingly.

6. EQUITY—WRONGFUL CONDUCT—UNCLEAN HANDS.

The maxim of unclean hands may not be invoked where the wrongful conduct does not injure or damage the party seeking to invoke it; if the alleged wrongful conduct appears not to have injured, damaged or prejudiced the party seeking to invoke the maxim of unclean hands, the maxim may not be successfully invoked, where the wrongful conduct was not contrary to law or public policy.

DISSENT IN PART, CONCURRENCE IN PART BY O'HARA, J.

7. CONTRACTS—REAL PROPERTY—BREACH OF CONTRACT—TORTIOUS INTERFERENCE—EVIDENCE.

*A plaintiff failed to make out a prima facie case of tortious interference with his contractual right to purchase real property where he alleged only that the defendant must have influenced the owner to the plaintiff's detriment because the deal he had made with the owner did not go through and failed to introduce any evidence sufficient to establish any question of fact as to what it is the defendant is supposed to have done to induce the breach of the purchase agreement.*

## Appeal from Muskegon, Charles A. Larnard, J. Submitted Division 3 February 7, 1974, at Grand

Rapids. (Docket No. 15192.) Decided June 24, 1974. Leave to appeal applied for.

Complaint by Gerald C. Meyering against Albert Russell, Cal Deitz, and Mrs. Cal Deitz for specific performance of a contract to sell real property. Cross-claim by defendants Deitz against Russell for return of money paid. Judgment for plaintiff against Russell for specific performance and against defendants Deitz for damages, and cross-claim dismissed. Defendants Deitz appeal. Judgment for plaintiff affirmed, but modified as to interest, and judgment dismissing cross-claim reversed.

*Parmenter, Forsythe & Rude* (by *John M. Briggs, III),* for plaintiff.

*Tom H. Linck,* for defendant Russell.

*Landman, Hathaway, Latimer, Clink & Robb* (by *W. Wayne Walston),* for defendants Deitz.

Before: R. B. BURNS, P. J., and ALLEN and O'HARA,* JJ.

ALLEN, J. This action for specific performance involves conflicting claims to commercial property in Muskegon Township, Michigan. The multiple transactions involved necessitate a detailed statement of the facts.

Defendant Russell, a car salesman, was the owner of the property subject to a mortgage to the Security First Bank of Ravenna. In 1968 he sold the property on a land contract to Robert Lynch for $24,500, with $2,500 down. By February 1969, Lynch was substantially in arrears on the monthly payments. On March 31, 1969, Russell, through Dorothy Farber, a real-estate saleswoman and his agent, signed a purchase agreement with plaintiff,

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

an insurance agent, to sell the property on land
contract for $21,500, with $4,000 down, of which
$2,000 would go to Farber as sales commission,
and the balance of $17,500 payable at $185 per
month with interest at 7%. The purchase agree-
ment contained no reference to the Lynch con-
tract, but closing was deferred to no later than
August 5, 1969, to allow Russell time to initiate
court proceedings to terminate the Lynch interest.
Court proceedings were commenced by Russell
who, on April 25, 1969, obtained a judgment from
the district court determining that Lynch was in
arrears $962.20, and giving Lynch until July 24,
1969, to redeem. Because the district court denied
Russell's demand to accelerate the entire balance
of about $20,000, Russell appealed to the circuit
court. However, Lynch did not tender the $962,
nor did he cross-file or take any legal action to
stay the period for redemption.

In June 1969, defendant Deitz, a licensed real-
estate broker for ten years, attempted to purchase
the Lynch interest but the deal fell through.
Shortly thereafter, public announcement was
made that Meijer Thrifty Acres had purchased 100
acres of land just north of the Russell property
and planned to construct a shopping-center com-
plex thereon. In July Deitz contacted Russell in-
forming him he would pay cash for the property
and assume the balance of Russell's mortgage to
the bank. Russell informed him of the March 31,
1969 purchase agreement with plaintiff and,
through his attorney, showed Deitz a copy thereof.

The record is conflicting as to the Russell-Deitz
relationship after the initial July contact. Deitz
testified he waited three or four weeks and did not
contact Russell again until after August 5, at
which time he was told the building was available

and that he should see Russell's attorney. Russell testified that he talked with Deitz five or six times prior to August 5. In any event, the record is clear that on August 11, Deitz signed a purchase agreement under which Deitz would purchase the property for $9,750 cash and assume the then mortgage balance of $10,211.06. Deitz gave Russell $250 earnest money and, on August 29, 1969, completed the transaction by paying the balance due and received a warranty deed from Russell which he recorded February 24, 1970.

Plaintiff testified that by May 7, 1969, he had arranged for financing sufficient to make the down payment and in July found a tenant who would pay $250 per month plus utilities. Between May 7 and mid-August, he attempted to close the purchase agreement with Russell. His contacts were both with Russell and more frequently with Farber. As the August 5th deadline drew closer his efforts to close became more frequent. He was always put off with explanations that legal complications involving the outstanding Lynch interest prevented the contract's immediate fulfillment but that Russell's attorney would take care of everything. Farber's testimony verified plaintiff's recitation of plaintiff's ability and willingness to close. She added that as late as August 6, plaintiff had phoned her offering to help pay the court cost of resolving the Lynch interest; that on August 7, she so informed Russell who then told her Deitz had informed him he had acquired a written assignment of the Lynch interest; that on August 8, Russell phoned back and said his attorney would first meet with Deitz; and that on August 12, Russell informed her he intended to close with Deitz.

On August 19, 1969, plaintiff filed suit against

Russell and recorded a lis pendens. Before signing the purchase agreement on August 11, Deitz examined the real estate recordings but did not check again on August 29, when the property was conveyed to him by warranty deed.

Subsequently, Deitz and his wife were added as defendants and in turn filed a cross-claim against Russell, claiming that if plaintiff were held to have a superior claim, Russell should reimburse Deitz for payments made by him for the property.

Following trial, the court on February 24, 1972, withheld decision on the cross-claim but found Deitz "a conveyance intermeddler" and entered judgment setting aside the conveyance by warranty deed to him. Specific performance of the purchase agreement dated March 31, 1969, between plaintiff and Russell was ordered and damages of $7,950 were assessed against Deitz. On August 24, 1972, the court entered judgment of no cause of action on the cross-claim of Deitz against Russell. Defendants Deitz appeal to this Court, claiming error both in the judgment of February 24, 1972, and August 24, 1972.

Because of the complexity of issues, we will first consider the issues raised by defendants Deitz on the judgment granting specific performance, and separately consider the trial court's denial of the cross-claim. As to the former, appellants claim error because (1) appellants were deprived of a fair trial by reason of improper examination of witnesses by the trial judge, (2) appellants were not purchasers pendente lite on August 11, 1969, when the purchase agreement was signed, and (3) appellants are not liable for damages, but, if liable, the computation thereof is excessive.

### Examination Of Witnesses By Trial Court

The record discloses sharp and frequent ques-

tioning by the trial judge. The facts were confusing and the witnesses' responses occasionally ambiguous and frequently conflicting. Clarification of testimony was required. Under these circumstances, exhaustive and sharp questioning, particularly in nonjury cases, is not error. *People v Wilder*, 383 Mich 122, 124; 174 NW2d 562 (1970); *Tait v Ross*, 37 Mich App 205, 207; 194 NW2d 554 (1971), *lv· to app den*, 386 Mich 787 (1972), *cert den*, 407 US 921; 92 S Ct 2462; 32 L Ed 2d 806 (1972).

## Purchasers Pendente Lite

On this issue, appellants assert the trial judge erred both as to the facts and law. As to the facts, it is contended that Deitz was a good-faith purchaser who did not renew his contact with Russell until 5 days after the August 5th closing deadline and only purchased after Russell informed him the Meyering deal was off. Although chancery cases are reviewed *de novo* this Court does not reverse or modify unless convinced it would reach a different result had it occupied the position of the trial court. *Wells v Wells*, 330 Mich 448; 47 NW2d 687 (1951); *Stribley v Michigan Marine*, 42 Mich App 218, 221; 201 NW2d 702 (1972), *lv to app den*, 388 Mich 786 (1972). Whether the action is in law or equity, principal regard must be given to the special opportunity of the trial court to judge the credibility of witnesses, and findings of fact will not be set aside unless clearly erroneous. GCR 1963, 517.1; *Rencsok v Rencsok*, 46 Mich App 250, 253; 207 NW2d 910 (1973). Review of the record discloses sufficient facts upon which the trial judge could determine that defendant did not patiently wait until after August 5 to renew his contacts with Russell. Defendant knew of the Meyering

agreement and, being an experienced real-estate broker, knew or should have known that Lynch's claim to the property effectively expired July 24. He was aware of the increased value of the land resulting from the Meijer Thrifty Acres development. Deitz injected himself into the Meyering agreement by making an admittedly more attractive offer. While the price was slightly lower, the down payment was $9,750, compared to Meyering's $4,000, of which $2,000 was due Farber as sales commission.

Although the decisions are not unanimous, the prevailing rule is that a third-party purchaser who takes title under an executory contract made prior to the filing of a lis pendens is protected even though the deed is executed after suit is started or the lis pendens is filed. 93 ALR 404; 51 Am Jur 2d, Lis Pendens, § 12, p 958–959. This doctrine is often subject to exceptions where the third-party purchaser is (1) made a party to the suit before rendition of judgment, *Tinnon v Tanksley,* 408 SW2d 98, 103 (Mo, 1966), or (2) has knowledge of the adverse claim at the time of signing the executory contract, or (3) has paid only a portion of the purchase price before the lis pendens is filed, 93 ALR 404 and cases cited therein. Of the exceptions, the most important is the requisite that the third-party purchaser has no knowledge of the adverse claim.

"It would seem to be a proper qualification of the rule that one who has entered into an executory contract to purchase before the institution of suit does not, by taking a deed while the suit is pending, become affected by the judgment therein as a purchaser pendente lite, that the contract must have been entered into without knowledge of the adverse claim, or at least without knowledge that a suit was contemplated; and in several of the cases herein reviewed it appears that the pur-

chaser was, at the time of entering into the contract, without knowledge of the outstanding claim." 93 ALR 404.

Relying on *Tinnon v Tanksley,* 408 SW2d 98 (Mo, 1966), appellant claims error of law in the trial court's finding that appellant purchased subject to the lis pendens. In that case, purchasers under a land contract executed eight months before the filing of a lis pendens were held not to be affected by the lis pendens even though the conveyance was made after the filing thereof. *Tinnon* is distinguishable from the instant case because the third-party purchaser was not made a party to the suit and also because the third-party purchaser had no notice of the interest of the party filing lis pendens. *Tinnon* heavily relied upon *Four-G Corp v Ruta,* 56 NJ Super 52, 62; 151 A2d 546, 551 (1959), where the Court said that if the third-party purchaser:

"had acquired this property pursuant to an agreement which originated at a time subsequent to filing of the *lis pendens* and *had been made parties to the action,* the judgment might have had the effect contended for, this of course depending upon the sufficiency of the defense interposed. * * * But such is not the case. Here, *acting in good faith* (and this is not questioned), they exercised an option which on the face of the record had priority over that held by Four-G."

The "effect contended for" was, of course, to defeat the third-party purchasers' right to retain the property.

Appellant also relies on *Hammond v Paxton,* 58 Mich 393; 25 NW 321 (1885), where a mortgage taken three days prior to the filing of a lis pendens was held unaffected although the mortgage was not recorded until after the lis pendens was filed.

Again, the case is distinguishable because, unlike the present case, the mortgagee in *Hammond* had given full value and taken delivery before the lis pendens was filed and at no time had either actual or constructive notice of the claim of the party who subsequently filed the lis pendens. We also note that the *Tinnon-Tanksley* contract contained an express provision that time was the essence of the agreement, 408 SW2d 98, 103. In the case now before us no clause to this effect appeared, and plaintiff, who had never been informed that August 5 was an absolute final date, was desperately attempting to close, both before and immediately after that date. Although no Michigan case has been found squarely in point we conclude that because all of the exceptions made in other jurisdictions to the rule are present in this case and particularly because Deitz knowingly interfered in the Meyering contract, the trial court was not in error in holding appellant acquired title subject to the lis pendens claim of plaintiff.

## Damages

Appellants concede that damages may be awarded where a tortious interference with another's contractual rights occurs, but assert that the rule requires the intentional doing of a wrongful act or other conduct indicating malice. Early cases did hold that malice was a prerequisite to liability but, as the law evolved, malice became less and less important. Today, liability may be found if the interference is by inducement or is purposeful interference. See 4 Restatement Torts, § 766, pp 49–63.

"Except as stated in Section 698, one who, without a privilege to do so, induces or otherwise purposely causes a third person not to (a) perform a contract with

another, or (b) enter into or continue a business relation with another is liable to the other for the harm caused thereby. * * * "

" * * * d. Induces or otherwise purposely causes. The word 'induces' refers to the situations in which A causes B to choose one course of conduct rather than another. Whether A causes the choice by persuasion or by intimidation, B is free to choose the other course if he is willing to suffer the consequences."

" * * * h. Inducement by offer of better terms. Another method of inducing B to sever his business relations with C is to offer B a better bargain than that which he has with C." 4 Restatement Torts, § 766, pp 49, 54–55, 58.

See also *Blum v William Goldman Theatres,* 69 F Supp 468, 471 (ED Pa, 1946), and *Springer v Singleton,* 256 Cal App 2d 184; 63 Cal Rptr 770; 27 ALR3d 1220 (1967). Appellant effectively persuaded Russell to breach his contract with Meyering by offering more attractive terms. The record also contains testimony permitting the trial court, who could best determine the credibility of the conflicting testimony, to conclude that appellant further pursued his efforts to thwart the Meyering contract by maintaining contact with Russell before August 5, and falsely representing to Russell he had recently acquired from Lynch an assignment of Lynch's land contract interest.

Having found that appellant induced Russell to break the Meyering contract, the trial court assessed damages of $7,950 for the monthly rental lost at $265 a month for the 30-month period from August 5, 1969, until February 3, 1972, with interest at 7% until paid. No offsetting costs were allowed. The record adequately justifies a fair monthly rental value of $265 and plaintiff's ability to rent. We believe the court erred as to the rate of interest. The statutory rate of interest allowed

on money judgments at the time of the decree was 5%. MCLA 600.6013; MSA 27A.6013. The applicable rule of damages in actions of specific performance is stated as follows:

"When specific performance is granted of a contract to convey real property, the court will enforce the equities of the parties in such manner as to put them as nearly as possible in the position they would have occupied had the conveyance been made when required by the contract. It will compensate the purchaser for any loss of the use of the property during the delay by awarding him the rental value of it, or the net rents and profits of it, for the period. It will compensate the vendor for any loss of the use of the purchase money during the delay by awarding him the appropriate interest for the proper period * * * but not to recover any excess thereof." 7 ALR2d 1204, § 4, pp 1211–1212, citing *Sloman v Rogers,* 259 Mich 302; 243 NW 13 (1932), and other Michigan cases.

"The true rationale of decision in respect of compensation for delay is that the contract is being enforced retrospectively and the equities adjusted accordingly." 7 ALR2d 1204, § 1, p 1207.

Appellants assert that if they must pay lost rental there should be a deduction taken for the $185 per month payments called for under the land contract. It is appellants' theory that only by subtracting the costs which plaintiff would have paid had the contract been in effect can the parties be restored to the position they would have occupied if the conveyance had been made August 5, 1969. Technically, appellants are correct with the important exception that had this been done the balance of principal on the land contract would have been reduced by $5,500, with a principal balance remaining of $12,000. Following the trial court's decision plaintiff entered into the contract with Russell March 1, 1972, paying $4,000 down,

leaving a balance due of $17,500. For this reason it would be error to allow any offset for land-contract payments. When plaintiff took possession he paid all taxes for 1969–1971 inclusive and therefore no offset is allowed for taxes. The judgment of February 14, 1972 is affirmed as to damages but modified so as to allow interest thereon at 5%.

## Cross-Claim

Appellant's cross-claim asks that if specific performance were granted, then appellant should have returned to him such amounts as he had paid Russell, together with loss of value not exceeding $30,000, with interest at 7%. After reviewing the transcript of trial, the court dismissed the cross-claim for failure to state a cause of action. Dismissal on these grounds is unusual when proofs have been taken. Admittedly, the cross-claim could have been more artfully drawn. Nevertheless, when read as part of the pleadings in the entire case it does state a cause of action. When considering a motion to dismiss for failure to state a cause of action, the factual allegations of the plaintiff are accepted as true along with any conclusions that reasonably may be drawn therefrom. *Crowther v Ross Chemical & Manufacturing Co,* 42 Mich App 426, 430; 202 NW2d 577 (1972).

Dismissal of the cross-claim unjustly enriches Russell and unduly penalizes Deitz. Russell would be paid twice. He is being paid by Meyering but, in addition, has received $9,750 cash plus some $5,-000 in mortgage payments. Conversely, dismissal of the cross-claim causes Deitz to not only lose the property but in addition lose all cash and mortgage payments made by him to Russell and pay damages to Meyering. Russell is not entirely blameless, as evidenced by the trial court's findings:

"It appears that Plaintiff was engaged in an obstacle race—obstructions raised by Defendant Russell time and again; and we perceive an avid and willing purchaser with an evasive and equivocal seller."

Russell took no steps to have Lynch removed from possession of the building after July 25, 1969, even though Lynch never paid the arrearage or posted a bond. Russell's appeal on the grounds of acceleration of the balance due was a convenient excuse to avoid final settlement with plaintiff.

Application of the rule that where specific performance is granted, the court will adjust the equities to place the parties as nearly as possible in the position they would have occupied had the March 31st contract been honored, requires the return by Russell to Deitz of the cash payment of $9,750, plus such amounts as were paid by Deitz on the mortgage plus $532.15 on 1968 taxes paid by Deitz. By coincidence this is the same amount as damages awarded plaintiff from Deitz. The 1968 taxes were Russell's obligation under the terms of the Meyering agreement. Interest of 5% from the date of the respective payments until paid, is awarded. Under the rule set forth in Restatement, Torts, supra, punitive damages are not assessable. Liability is limited to the harm caused thereby.

We reject Russell's contention that the doctrine of unclean hands precludes relief on the cross-claim. It is true that Deitz, plaintiff in the cross-claim, was at fault, but his fault was against Meyering rather than against Russell, the defendant in the cross-complaint. The maxim of unclean hands may not be invoked where the wrongful conduct does not injure or damage the defendant.

"As a general rule, the doctrine of unclean hands is applicable only where the party seeking to invoke it was injured by the alleged wrongful conduct. If the

alleged wrongful conduct of the complainant appears
not to have injured, damaged, or prejudiced the defend-
ant, the maxim may not be successfully invoked, where
the wrongful conduct was not contrary to law or public
policy. Thus, it has been held that the maxim should
not be applied where the defendant has not been seri-
ously harmed and the wrong complained of can be
corrected. *A fortiori,* where the defendant has profited
by the wrongful conduct, he is in no position to invoke
the maxim." 27 Am Jur 2d, Equity, § 144.

This rule has been applied in *White Star Refining
Co v Holly Lumber & Supply Co,* 271 Mich 662,
664; 261 NW 72 (1935), and *Price v Nellist,* 316
Mich 418; 25 NW2d 512 (1947).

The judgment of February 24, 1972 is modified
to conform to this opinion and the judgment of
August 24, 1972 is reversed. Each judgment is
remanded to the trial court to enter judgment in
accordance with this opinion. Neither party having
prevailed in full, no costs are allowed.

R. B. BURNS, P. J., concurred.

O'HARA, J. *(dissenting in part, concurring in
part).* I dissent in part from the opinion of my
colleagues. My disagreement is limited to that
portion of Judge Allen's opinion which deals with
the issue of the alleged tortious interference by
Deitz with the contractual rights of Meyering.

I do not agree that the testimony and exhibits
would support a permissible inference by the trier
of fact that defendant Deitz tortiously sought to
thwart consummation of the contract between
Meyering and Russell.

Other than the perfectly legal act of making an
offer to purchase the involved property with
knowledge of the Meyering land contract nothing
appears of record which would indicate that Deitz

resorted to any unlawful methods of competition or used illegal means to obtain the property from Russell at Meyering's expense.

Where "dickering" as we know the term in our system is going on there is nothing legally impermissible in trying to better an offer that has had conditional acceptance only.

To me there must be more than simple outbidding, and even outmaneuvering. A free economic society can be so hampered by limitations upon the exercise of business judgment or acumen that backyard discussions can grow into executed contracts supporting actions for tortious interference.

I don't see anything defendant Deitz did in this case other than make a more acceptable offer to the fee owner of a parcel of realty. The title to the parcel was, to say the least, somewhat murky. There was an outstanding land-contract vendee's interest which was involved in litigation. There also was an outstanding mortgage.

It would be interesting to follow up all the possibilities the learned trial judge would have had to consider in order as he said to put the parties "in as nearly as possible * * * the position they would have occupied [presumptively August 5, 1969] had the conveyance been made when required by the contract".

As of that date Russell would have had to specifically perform his "contract" with Meyering. I suppose that means Russell would have had to execute a land contract from himself to Meyering. This contract was subject to a partially foreclosed land-contract vendee's interest belonging to Lynch. Russell had instituted foreclosure proceedings of this interest but was dissatisfied with the verdict of the district court because the verdict did not enforce the acceleration clause in *that* contract

and he appealed on that ground to the circuit court. The circuit court had not acted as of August 5, 1969, so really no one knew at that time how much money was necessary to make the contract current or pay it up. Meanwhile, back at the courthouse, as far as the record showed, Russell had the fee title to the property subject to a mortgage of over some $10,000.

Enter Deitz. I am sure he realized that the property was potentially more valuable than the sum total of the land contract interests and the mortgage. So Deitz said to Russell, in effect, "I'll take the whole thing over, assume the mortgage and assume Lynch's and Russell's liabilities and obligations together with some additional cash".

It would seem to me that Mr. Russell would have needed very little pushing, influencing or other tortious activity on the part of Mr. Deitz to accept the latter's offer.

Specifically I find no evidence sufficient to establish any question of fact as to what it is Deitz is supposed to have done to induce the breach of the purchase agreement.

There are numerous references in the record to what "she", apparently Miss Farber, did and a few to what "they", apparently Farber and Russell, did.

My colleague says:

"The record is conflicting as to the Russell-Deitz relationship after the initial July contact. Deitz testified he waited three or four weeks and did not contact Russell again until after August 5."

All I can find in this record at most is an equipoised situation in which Meyering alleges Deitz must have influenced Russell to his detri-

ment because the deal he made with Russell did not go through.

Deitz contends Russell maintained he could not sell the property until after August 5. Up to this point I find nothing illegal or even unethical about anything anyone did. Finally, two days after the expiration date of the August 5 deadline Deitz, as certainly was his right, called Russell and asked him if the building was available. Russell said it was. From there on Deitz worked out the details of the sale with Russell's attorney.

I am a sworn enemy of substituting my judgment for the trial judge on fact questions. I am also a card-carrying believer that the plaintiff bears the burden of making out a prima facie case of whatever he alleges. To me plaintiff's case completely fails of proof.

I would affirm the grant of specific performance as between Russell and Meyering. I would reverse as to the money judgment against Deitz.

Thus while I conclude that Deitz did not tortiously interfere with the purchase and sale agreement between Russell and Meyering, this conclusion in no way prohibits me from holding there was a valid enforceable agreement between Meyering and Russell and that the trial court could properly order its performance. Neither does it mean that Deitz, as no wrong-doer, should lose the property he bought, and all the money he paid out for it including any taxes and other payments, if any, to clear and protect the title.

Thus I would order an accounting in the trial court to determine what is owed to Deitz and impress a lien for that amount upon the involved realty.

Nobody in this lawsuit had a corner on the equities. Meyering could have had the property at

his agreed price and under his agreed terms by making the payment on time, into court if need be, and demanding performance by Russell.

Russell could have stayed out of the litigation by fulfilling his contract with Meyering. Deitz could have avoided his involvement by checking the record title and finding the lis pendens had been filed before he consummated his agreement with Russell.

Only in this way do I see that all the parties are put back where they were when they all set in motion what ended up in this tangled web.

I so vote. No costs to anyone. Nobody won or lost conclusively.