## HUTTON v ROBERTS

Docket Nos. 96674, 96704. Submitted November 15, 1988, at Detroit. Decided October 26, 1989. Leave to appeal applied for.

Billy R. Hutton and Tonya Hutton brought an action in the Oakland Circuit Court against Ronald Roberts, Thomas and Ann Richardson and others alleging breach of contract against Roberts and tortious interference with contractual relations against the Richardsons. The court, Robert L. Templin, J., granted judgment for plaintiffs and denied them a judgment notwithstanding the verdict. The evidence showed that the Richardsons offered to buy Roberts' property after Roberts had contracted to sell the property to plaintiffs. Roberts appealed, the Richardsons appealed and the appeals were consolidated by the Court of Appeals.

The Court of Appeals *held*:

1. A plaintiff who alleges tortious interference with a contractual or business relationship, in order to withstand a motion for summary disposition, must allege the intentional doing of either a per se wrongful act or a lawful act with malice and unjustified in law for the purpose of invading plaintiff's contractual rights or business relationship and, in the latter instance, plaintiff must demonstrate, with specificity, affirmative acts by the interferer which corroborate the unlawful purpose of the interference. The evidence did not show any acts of the Richardsons which corroborated the unlawful purpose of interference. Thus, the court erred in denying the Richardsons a judgment notwithstanding the verdict.

2. Defendant Roberts' objections to certain jury instructions were not preserved for appeal by a timely objection and the Court of Appeals did not find manifest injustice.

3. The court properly instructed the jury on a principal's liability for acts of his agent. The jury's verdict against Roberts should not be disturbed.

Affirmed as to Roberts and reversed as to the Richardsons.

REFERENCES

Am Jur 2d, Agency § 194; Interference §§ 4, 5, 43.

Liability of purchaser of real estate for interference with contract between vendor and another purchaser. 27 ALR3d 1227.

1. Torts — Interference With Contractual or Business Relationships.

A plaintiff who alleges tortious interference with a contractual or business relationship, in order to withstand a motion for summary disposition, must allege the intentional doing of either a per se wrongful act or a lawful act with malice and unjustified in law for the purpose of invading plaintiff's contractual rights or business relationship and, in the latter instance, plaintiff must demonstrate, with specificity, affirmative acts by the interferer which corroborate the unlawful purpose of the interference.

2. Agency — Unauthorized Acts of Agent — Ratification.

A principal is bound by the acts of an agent done within the scope of the agent's authority; even if unauthorized, acts of an agent are ratified by and binding upon the principal if the latter accepts the benefits of the unauthorized acts with knowledge of the material facts.

*Butzel, Long, Gust, Klein & Van Zile* (by *T. Gordon Schupholm, II,* and *Patricia L. Sadler*), for plaintiffs.

*Gromek, Bendure & Thomas* (by *Daniel J. Wright*), for Thomas and Ann M. Richardson.

*FJC Attorneys Group, P.C.* (by *Fletcher J. Campbell*), for Ronald Roberts.

Before: Holbrook, Jr., P.J., and Michael J. Kelly and T. M. Burns,* JJ.

Per Curiam. These appeals are taken by defendants from a judgment for money damages entered after a jury trial and from a denial of a post-trial motion for judgment notwithstanding the verdict. Joint and several liability was premised against defendants Thomas and Ann Richardson on the tort of interference with contractual relations and defendant Ronald Roberts on breach of a contract

---

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

to sell a home. We affirm in part and reverse in part.

Defendants Thomas and Ann Richardson argue that the trial court erred by denying a directed verdict and judgment notwithstanding the verdict on the claim of tortious interference with contractual relations because the evidence was insufficient to show that they acted with an illegal, unethical, or improper purpose to induce Roberts' breach of his purchase agreement with plaintiffs. Roberts and plaintiffs had already signed their purchase agreement when Roberts and the Richardsons negotiated the Richardsons' purchase of the same home and memorialized those negotiations in another purchase agreement. It is the Richardsons' contention that their role in the series of events culminating in the closing of their purchase of the home was that of persons passively accepting Roberts' offer to sell their home; their lack of concerted action to bring about a breach of Roberts' preexisting contractual obligations to plaintiffs should insulate them from tort liability.

In reviewing the ruling of the trial court on a motion for a directed verdict or judgment notwithstanding the verdict, this Court must view the evidence and all legitimate inferences drawn from it in a light most favorable to the nonmoving party and determine whether sufficient evidence has been presented to establish a prima facie case. If reasonable jurors could honestly reach different conclusions, then the motion should have been denied, and the controverted matter should have been decided by jury verdict. *Bonelli v Volkswagen of America, Inc,* 166 Mich App 483, 495-496, 514; 421 NW2d 213 (1988), lv den 430 Mich 896 (1988).

In the factually similar case of *Meyering v Russell,* 53 Mich App 695; 220 NW2d 121 (1974), the plaintiff signed a purchase agreement with the

owner of a piece of commercial real estate. Subsequently, the defendant commenced a series of contacts and negotiations with the owner, culminating in the execution of a competing purchase agreement for the same property. The defendant's ultimately successful efforts to close the deal continued up to and including the completion of the sale transaction. Prior to the closing, plaintiff, seeing that he was about to lose the benefit of his own agreement, commenced litigation and recorded a lis pendens. After trial, the court entered judgment setting aside the conveyance from the owner to the defendant, and a panel of this Court, with one member in dissent, affirmed on the ground that the defendant's title was taken subject to the lis pendens. The Supreme Court's summary reversal, 393 Mich 770 (1974), cited the reasoning of the dissent, to which we look for precedential guidance. Reversal was thusly premised on the plaintiff's failure to establish the requisite interference with contractual rights. Even though the defendant knew of the existence of the previous purchase agreement and persisted in his own efforts to close a deal inconsistent with the first agreement, the dissenter found "no evidence sufficient to establish any question of fact as to what it is Deitz [the defendant buyer] is supposed to have done to induce the breach of the purchase agreement [with the plaintiff]." 53 Mich App 711. Rather, "nothing appears of record which would indicate that Deitz resorted to any unlawful methods of competition or used illegal means to obtain the property from Russell [the owner] at Meyering's [the plaintiff's] expense"; there was "nothing illegal or even unethical about anything anyone did." Id., pp 709-710, 712.

It was apparent in *Meyering* that the defendant, in seeking to acquire the property, acted for his

own pecuniary advantage, knowing that an inevitable consequence of his conduct was to disrupt the plaintiff's own expectations grounded in a valid, contractually binding purchase agreement. The salient teaching from *Meyering* is that conduct tending to cause interference in the exercise of someone else's contractual rights is not actionable in tort without a showing of some type of overriding improper purpose.

The nature of the illegal, unethical, or improper purpose requisite to tortious interference with a contract was set forth definitively and, in our view, correctly in *Feldman v Green,* 138 Mich App 360; 360 NW2d 881 (1984), lv den 422 Mich 961 (1985):

> We hold, consistently with prior rulings by the Supreme Court of this state, that one who alleges tortious interference with a contractual or business relationship must allege the intentional doing of a per se wrongful act or the intentional doing of a lawful act with malice and unjustified in law for the purpose of invading plaintiff's contractual rights or business relationship. Under the latter instance, plaintiff necessarily must demonstrate, with specificity, affirmative acts by the interferor which corroborate the unlawful purpose of the interference. [*Id.,* pp 369-370.]

The plaintiff in *Feldman* was aggrieved by the defendant's purchase of certain nursing homes in contravention of the plaintiff's preexisting option to acquire the same properties. In affirming summary judgment for the defendants, this Court, relying on *Meyering, supra,* observed that mere competition between parties for the right to acquire the same property from the same owner was not a basis for liability.

The conclusions reached in *Feldman* were based in part on *Wilkinson v Powe,* 300 Mich 275; 1

NW2d 539 (1942), where the plaintiff was engaged in the business of taking milk from the farmers producing it and delivering it to a creamery. To that end, the plaintiff entered into written agreements with the producing farmers located on the plaintiff's milk routes. After the creamery decided to assume the delivery function itself, its representatives sent letters directly to the farmers apprising them of the discontinuance of the business relationship between the creamery and the plaintiff. The creamery was successful in forcing the plaintiff out of business. In its affirmance of a verdict for the plaintiff, the Supreme Court reiterated that the theory of tort relied upon by the plaintiff required, in addition to mere persuasion of a person to break a contract, a showing that the interference sprung from the purpose of injuring the plaintiff or benefiting the defendant at the expense of the plaintiff. *Id.,* p 282. This improper purpose, which was described in terms of "malice" or "the intentional doing of a wrongful act without legal or social justification," is to be inferred from some act done intentionally and without just cause or excuse. *Id.,* p 283. The improper or malicious purpose must be corroborated by an objective manifestation:

> If the defendants in the instant case had merely refused to accept further delivery of milk by plaintiff, they would have been clearly within their legal rights, although this would have resulted in a breach of contract between plaintiff and the farmers. But defendants did more. Their letters of May 29th and June 1st *show active solicitation of a breach of the contract* and their refusal to accept delivery of milk was merely another step in bringing about the breach. [*Id.,* pp 283-284, emphasis supplied.]

In cases of competing purchase agreements over

the same piece of realty, the rule is that "the placing of another offer to purchase is not per se a violation." *Feldman, supra,* p 379. Consistent with the case law discussed above, it is instead necessary to show some active solicitation or encouragement of a breach of an already existing contract, accompanied by and corroborative of a malicious, unjustified purpose to inflict injury. The act of making an offer or of accepting an offer of another in violation of the other's contractual obligations is, by itself, not enough. See *Meyering, supra; Feldman, supra; Weitting v McFeeters,* 104 Mich App 188, 196-198; 304 NW2d 525 (1981) (tortious interference with business relationship derived from an unenforceable purchase agreement); *Derosia v Austin,* 115 Mich App 647, 653-654; 321 NW2d 760 (1982), lv den 417 Mich 949 (1983).

Moreover, Michigan law appears to be in accord with the Restatement position, which is stated as follows:

> One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract. [4 Restatement Torts, 2d, § 766, p 7.]

Although § 766 requires an improper interference instead of the more conventional terminology requiring an act done "with malice and unjustified in law," *Feldman, supra,* p 369, it is clear that the term "improper" is meant to encompass and subsume traditional notions of malice, lack of justification, and improper purpose. See 4 Restatement Torts, 2d, ch 37, introductory note, pp 5-7 and

§ 767, pp 26-27. The Restatement does not alter the state of the law in this regard.

In the case at bar, the Richardson defendants did nothing more than make an offer in the hope that plaintiffs' prior purchase agreement with Roberts would fall through. The Richardsons and plaintiffs both made binding agreements to purchase Roberts' home. The legal status and the probability of closing on the prior purchase agreement between Roberts and plaintiffs remained unclear throughout the series of events surrounding the disputed transactions, and the Richardsons had no duty to determine at their own risk whether their dealings with Roberts would place him in a legal breach of his contractual obligations owed to plaintiffs. The evidence further suggests that, after signing a purchase agreement, the Richardsons simply bided their time and positioned themselves for a closing, hoping that the home would become available for them to purchase, which was altogether plausible under the circumstances. To that end, they made provision with the bank to assume the mortgage on the home and otherwise made preparation for closing. Although plaintiffs contend that the Richardsons thereby acted to delay a closing on plaintiffs' own purchasing agreement by complicating paperwork required by the bank for plaintiffs' assumption of the mortgage, this is belied by the Richardsons' prompt action to withdraw their own application, thereby making way for the transfer of the mortgage to plaintiffs. There is no specific evidence of "affirmative acts by the interferor which corroborate the unlawful purpose of the interference." *Feldman, supra,* p 370. Rather the evidence demonstrates only that the Richardsons acted in pursuit of the entirely legitimate purpose of acquiring the residence for themselves. The fact that they

succeeded, without a showing of some demon-
strated improper or malicious motivation, is no
cause for them to be answerable to plaintiffs in
tort. Hence, the trial court erred by denying the
Richardsons judgment notwithstanding the ver-
dict.

The Restatement requires the plaintiff to prove
that the defendant induced or otherwise caused
nonperformance of the contract. 4 Restatement
Torts, 2d, *supra.*

> One does not induce another to commit a breach
> of contract with a third person under the rule
> stated in this Section when he merely enters into
> an agreement with the other with knowledge that
> the other cannot perform both it and his contract
> with the third person. . . . For instance, B is under
> contract to sell certain goods to C. He offers to sell
> them to A, who knows of the contract. A accepts
> the offer and receives the goods. A has not induced
> the breach and is not subject to liability under the
> rule stated in this Section. [*Id.,* § 766, comment n,
> p 14.]

Under the evidence submitted in this case, plain-
tiffs are wholly unable to demonstrate that the
Richardsons engaged in any impropriety of this
nature. We reverse the trial court's denial of a
directed verdict limited to the Richardson defen-
dants.

Defendant Roberts' liability was premised on
breach of contract. On appeal, he argues that he
cannot be liable in contract both (1) because he
should not be bound by the actions of his broker
and (2) because he was relieved of any duty to sell
due to plaintiffs' noncompliance with certain con-
tractual conditions. Roberts further argues that
the trial court erred by failing to instruct the jury
accordingly. However, no objection was made to

the jury instructions given at trial, thereby precluding appellate review in the absence of manifest injustice. See *Jackson Printing Co, Inc v Mitan,* 169 Mich App 334, 341; 425 NW2d 791 (1988). We are not persuaded that any manifest injustice has occurred in this case.

A principal is bound by the acts of an agent done within the scope of the agent's authority. *Allstate Ins Co v Snarski,* 174 Mich App 148, 157-158; 435 NW2d 408 (1988), lv den 432 Mich 883 (1989). See also *Birou v Thompson-Brown Co,* 67 Mich App 502, 509; 241 NW2d 265 (1976), lv den 397 Mich 808 (1976). Even if unauthorized, acts of an agent are ratified by the principal if the latter accepts the benefits of the unauthorized acts with knowledge of the material facts. *Bruno v Zwirkoski,* 124 Mich App 664, 668; 335 NW2d 120 (1983). The jury was instructed according to these principles with respect to the agency relationship between Roberts and his broker, and we see no reason to fault its fact-finding.

Similarly, conflicting evidence regarding the validity of the purchase agreement between Roberts and plaintiffs was submitted to the jury, which resolved the matter in plaintiffs' favor. The resultant verdict and incorporated finding of a breach of contract will not be disturbed.

Although Roberts erroneously argues that his liability was improperly premised on the tort of intentional infliction of emotional distress, that tort was neither pled nor submitted to the jury. This argument amounts to nothing more than a challenge to the jury instructions on the proper components of damages for breach of contract; failure to object below precludes appellate review.

Affirmed as to defendant Roberts and reversed as to defendants Richardson.