*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

VALUE SAVE PROPERTY, LLC, BARASH
YOUSEF HOLDINGS, LLC, and EDDIE BARASH,

     Plaintiffs-Appellees,

v

WISAM SATTAM,

     Defendant-Appellant.

UNPUBLISHED
February 19, 2026
2:13 PM

No. 366285
Oakland Circuit Court
LC No. 2022-194172-CB

---

WISAM SATTAM,

     Plaintiff-Appellant,

v

BARASH YOUSEF HOLDINGS II, LLC, EDDIE
BARASH, and RAID YOUSEF,

     Defendants-Appellees.

No. 369975
Oakland Circuit Court
LC No. 2022-195780-CB

---

VALUE SAVE PROPERTY, LLC, and WISAM
SATTAM,

     Plaintiffs-Appellants,

v

BARASH YOUSEF HOLDINGS, LLC, EDDIE
BARASH, and RAID YOUSEF,

     Defendants-Appellees.

No. 370472
Oakland Circuit Court
LC No. 2022-197087-CB

---

-1-

Before: FEENEY, P.J., and GARRETT and BAZZI, JJ.

PER CURIAM.

In Docket No. 366285,[1] defendant, Wisam Sattam, appeals as of right the trial court's April 3, 2023 opinion and order: (1) granting in part and denying in part his motion for summary disposition under MCR 2.116(C)(5), (8), and (10); (2) granting summary disposition in favor of plaintiffs, Value Save Property, LLC (VSP), Barash Yousef Holdings, LLC (BYH), and Eddie Barash, under MCR 2.116(I)(2); and (3) entering a declaratory judgment regarding Sattam's status as a member in VSP. In Docket No. 369975, Sattam, who was the plaintiff in this action, appeals as of right the trial court's November 6, 2023 opinion and order granting summary disposition under MCR 2.116(C)(8) and (10) in favor of defendants, Barash Yousef Holdings II, LLC (BYH II), Barash, and Raid Yousef. In Docket No. 370472, Sattam and VSP, the plaintiffs here, appeal as of right the trial court's November 30, 2023 opinion and order granting summary disposition under MCR 2.116(C)(7), (8), and (10) in favor of defendants, Yousef, Barash, and BYH. In all three matters, we affirm.

I. BACKGROUND

A. FACTUAL BACKGROUND

This case involves a business dispute between Sattam, on the one hand, and Barash and Yousef, on the other hand, over the management of two companies: VSP and BYH II. Docket No. 366285 is a declaratory-judgment action filed by VSP, BYH, and Barash against Sattam relating to whether Sattam was an admitted member of VSP. Docket No. 369975 relates to whether Sattam was a member of BYH II. Docket No. 370472 involved claims by Sattam and VSP against BYH, Yousef, and Barash in connection with Sattam's alleged membership in VSP.[2]

VSP is the landlord for a commercial building in Detroit known as the Livernois Property. Value Save, Inc. (VSI) is a longstanding tenant of the Livernois Property and rented space from VSP's predecessor.

On October 7, 2005, VSP was formed. Its members included BYH,[3] Eli Thomas (Eli), Yousif Thomas (Yousif), Nadir Kizi (Nadir), and Suhel Kizi (Suhel). Yousef and Barash both

---

[1] This Court consolidated the appeals in Docket Nos. 366285, 369975, and 370472. *Value Save Prop, LLC v Sattam*, unpublished order of the Court of Appeals, entered December 4, 2024 (Docket Nos. 366285 and 370472); *Value Save Prop, LLC v Sattam*, unpublished order of the Court of Appeals, entered April 9, 2025 (Docket Nos. 366285, 369975, and 370472).

[2] A related case was filed in Oakland Circuit Court Case No. 21-189730-CB by VSP, BYH, and Barash against Sattam and a marijuana dispensary named Green Development Group, LLC, which was renting space in VSP's commercial building. Although this case was dismissed and not appealed, it is relevant for background purposes.

[3] BYH was formed in August 2005; Barash and Yousef were the sole members of the company, and Barash and Yousef each had an equal interest in the company.

-2-

executed the operating agreement for VSP on behalf of BYH. BYH received a 40% interest in VSP at its formation. Eli, Yousif, Nadir, and Suhel collectively received the remaining 60% interest, with each member receiving a 15% interest. Sattam was not involved initially in the company. The language of VSP's operating agreement is at the center of the parties' dispute.

In February 2006, Yousef and Barash formed BYH II. Barash and Yousef were joint and equal members of BYH II. Each man received 500 shares in the company in exchange for a capital contribution. Barash and Yousef both signed the operating agreement, which designated them as comanagers. There is no language in the operating agreement indicating that Sattam was either a member or a manager of the company; however, Sattam maintains that he became a member of BYH II at a later time.

In August 2018, Sattam entered into a membership interest purchase agreement with Eli, Yousif, Nadir, and Suhel to purchase their membership interest in VSP for $819,392.73. Sattam agreed to be bound by VSP's operating agreement. The approval of the assignment form was signed by both Sattam and BYH. Sattam signed as a representative of VSP and in his individual capacity as a member. For BYH, a signature line appeared for both Barash and Yousef, but only Yousef signed the agreement:

Wissam Sattam

**APPROVAL OF ASSIGNMENT**

The undersigned, constituting all Members of Value Save Property, LLC agree to the above-stated Assignment of Membership Interest pursuant to the Operating Agreement.

The Company
Value Save Property, LLC

By: _____
By: Wissam Sattam
Its: Member

Members

Wissam Sattam

Barash Yousef Holdings, LLC

By: Eddie Barash          By: Raid Yousef
Its: Member               Its: Member

During his deposition taken in connection with Oakland Circuit Court Case No. 2022-197087-CB (Docket No. 370472), Sattam acknowledged that he did not pay the full amount identified in the purchase agreement for his share in VSP and instead paid something closer to $500,000 in cash. Sattam explained that some of the sellers gave him a discount on the purchase price.

-3-

For his part, Barash acknowledged that he did not object in theory to the sale of 60% of the interest in VSP, but he assumed that the shares would be split evenly between himself, Yousef, and Sattam. Barash testified, "I okayed the sale because I was under the impression it was for me, my son-in-law [Yousef], and him [Sattam]." Even so, Barash did not sign the purchase agreement.

A dispute later arose over whether Sattam was a controlling member of VSP. In 2021, Sattam attempted to remove Barash as the manager of VSP and name himself manager. Sattam later attempted to evict VSI from the property, resulting in an action in the 36th District Court. The parties disputed which tenants had valid leases and began to make conflicting business decisions regarding both VSP and BYH II.

## B. PROCEDURAL HISTORY IN DOCKET NO. 366285

In May 2022, after several lawsuits were initiated relating to this business dispute, VSP, BYH, and Barash sued Sattam in a declaratory action in Oakland Circuit Court, Case No. 2022-194172-CB. VSP, BYH, and Barash maintained that Sattam was not a Qualified Purchaser, as defined under VSP's operating agreement, such that he could not initiate proceedings on behalf of VSP. BYH, through both Barash and Yousef, had to approve Sattam's admission as a member, which did not occur in this case. They asked the court to enter a declaratory judgment providing that: (1) Sattam was not an admitted member of VSP, (2) Barash remained the manager of VSP, and (3) Sattam's actions as purported manager of VSP were void.

Sattam moved for summary disposition under MCR 2.116(C)(5), (8), and (10), arguing that he became the majority owner of VSP when the members owning a 60% interest in the company transferred their interests to him. Sattam argued that Barash and BYH lacked standing to sue because they were neither a manager nor a majority shareholder of VSP, and Barash did not suffer an injury distinct from VSP. He also argued Yousef had apparent authority to sign the purchase agreement on Barash's behalf. VSP, BYH, and Barash responded that they had standing to sue Sattam because Sattam's actions detrimentally affected them, and they had an interest in the rights of the parties in VSP. VSP, BYH, and Barash argued they were entitled to summary disposition under MCR 2.116(I)(2) because Sattam presented no evidence that he was admitted as a member of VSP.

The trial court ruled that VSP, BYH, and Barash had standing to sue because live controversies existed among the parties about the issues raised in the complaint. The court also ruled that VSP, BYH, and Barash were entitled to summary disposition because the requirements for Sattam's admission as a member of VSP—as outlined in VSP's operating agreement—were not met. Specifically, BYH, through both of its members, had to approve of Sattam's admission as a member under § 8.6.1 of VSP's operating agreement. Therefore, Sattam lacked authority to remove Barash as manager and appoint himself manager of VSP. The court also rejected Sattam's suggestion that Yousef had apparent authority to sign the purchase agreement on Barash's behalf because Yousef's act of signing the purchase agreement could not be traced back to Barash or anyone else serving as a principal of BYH.

Sattam moved for reconsideration, emphasizing that Barash testified during his recent deposition in a related case that he " 'okayed the sale' " of the 60% interest in VSP to Sattam. Sattam also explained that he guaranteed a loan for VSP shortly after his purchase, showing that

-4-

Barash and Yousef understood Sattam to be a member of VSP. VSP, BYH, and Barash responded that Sattam's motion for reconsideration discussed new evidence that was not obtained or produced within the course of discovery in this case. The trial court denied the motion for reconsideration, finding that Sattam was relitigating the issues presented in the motion for summary disposition. The court explained that even if the deposition testimony were properly before the court, Barash's deposition testimony did not establish that Sattam was admitted as a member of VSP under its operating agreement. Sattam then appealed in Docket No. 366285.

## C. PROCEDURAL HISTORY IN DOCKET NO. 369975

In November 2021, Sattam sued BYH II, Barash, and Yousef in Wayne Circuit Court Case No. 21-015960-CB. Sattam alleged that he was alienated from participating in BYH II despite having a 25% membership interest in the company. He specifically pointed to a transaction involving a Colorado entity named WCR 34 & Hwy 25-330, LLC. Sattam raised claims for shareholder oppression, breach of fiduciary duty, accounting, and declaratory relief in the form of dissolution and liquidation of BYH II. BYH II, Barash, and Yousef moved for summary disposition arguing that the Oakland Circuit Court was the appropriate venue for this action. The judge agreed and transferred venue to Oakland County, where the case was designated as Case No. 2022-195780-CB.

After a period of discovery, Yousef, Barash, and BYH II moved for summary disposition under MCR 2.116(C)(8) and (10). In his motion for summary disposition, Yousef argued that Sattam presented no documentary evidence to support that he was admitted as a member of BYH II and therefore lacked standing to sue. Yousef also argued that Sattam's failure to timely respond to his requests for admission meant that Sattam admitted—by failure to respond—that he did not purchase a membership interest in BYH II. For his part, Sattam relied on tax documents for BYH II indicating that he was a 25% partner in the company, and he argued that judicial estoppel prevented Barash and Yousef from taking a different position on his status in BYH II. In their separate motion for summary disposition, Barash, and BYH II also argued that Sattam lacked standing because he was not a member of BYH II. The trial court deemed Sattam's failure to respond to Yousef's requests for admission as admitted by nonresponse. This included the admission that Sattam was not admitted as a member of BYH II.

In a written opinion and order addressing the motions for summary disposition, the court ruled that Sattam lacked standing to sue because he was not a member of BYH II. As for the tax documents, the court ruled that tax documents were not proof of membership in a limited liability company (LLC). As the court ruled, judicial estoppel did not apply because none of the defendants argued that Sattam was a member of BYH II in a prior judicial proceeding. The court also ruled that each claim failed on the merits. The court later denied Sattam's motion for reconsideration. The appeal in Docket No. 369975 followed.

## D. PROCEDURAL HISTORY IN DOCKET NO. 370472

VSP and Sattam also filed a separate lawsuit against BYH, Barash, and Yousef in Wayne Circuit Court Case No. 21-015976-CB. Sattam and VSP alleged that VSP was improperly paying Yousef through VSP's bank account. Sattam and VSP raised various claims for relief. This matter was transferred to the Oakland Circuit Court because there were already pending cases in Oakland

County. The trial judge expressed concern for possible inconsistent rulings and noted that transferring venue would preserve judicial economy.

After the case was transferred to the Oakland Circuit Court and assigned Case No. 2022-197087-CB, Barash, and BYH moved for summary disposition under MCR 2.116(C)(7), (8), and (10). They argued that Sattam and VSP's claims were barred by res judicata and collateral estoppel because the trial court already ruled that Sattam was not a member of VSP. Yousef also moved for summary disposition under MCR 2.116(C)(5), (8), and (10), adding to the arguments raised by Barash and BYH that Sattam also lacked standing to sue.

Sattam and VSP responded to both motions. They argued that res judicata and collateral estoppel did not apply because the court did not decide the merits of their claims, this case was technically filed first in the Wayne Circuit Court, and the trial court's judgment in the earlier case was stayed pending appeal in Docket No. 366285.

In a written opinion and order, the trial court concluded that Sattam's claims were barred under the doctrines of res judicata and collateral estoppel because the court already adjudicated Sattam's status in VSP. As the court explained, the legal standard was which case was decided first, not which case was filed first. Additionally, the court found that Sattam lacked standing to sue on VSP's behalf and that his claims were moot because he was not admitted as a substitute member of VSP and had no authority to act on behalf of the company. The trial court later denied Sattam's motion for reconsideration, and the appeal in Docket No. 370472 followed.

## II. DOCKET NO. 366285

### A. SATTAM'S MEMBERSHIP STATUS IN VSP

In Docket No. 366285, Sattam first argues that the trial court erred by finding that Sattam was a transferee rather than an admitted member of VSP. We disagree.

### 1. PRESERVATION AND STANDARD OF REVIEW

In general, an issue is preserved for appeal if it is raised in or decided by the lower court. *Glasker-Davis v Auvenshine*, 333 Mich App 222, 227-228; 964 NW2d 809 (2020). The issue whether Sattam was admitted as a member of VSP under the operating agreement was raised in Sattam's motion for summary disposition and decided in the court's opinion and order. Therefore, the overarching issue is preserved for appellate review. See *id*.

But Sattam did not raise the issue of Yousef's implied actual authority, which was based on Barash's deposition testimony, until his motion for reconsideration. An issue raised for the first time in a motion for reconsideration is not preserved for appellate review. See *Dep't of Environmental Quality v Morley*, 314 Mich App 306, 316; 885 NW2d 892 (2015). Yet we overlook the preservation requirements "if the failure to consider the issue would result in manifest injustice, if consideration is necessary for a proper determination of the case, or if the issue involves a question of law and the facts necessary for its resolution have been presented." *Tolas Oil & Gas Exploration Co v Bach Servs & Mfg, LLC*, 347 Mich App 280, 289-290; 14 NW3d 472

-6-

(2023). Indeed, all facts necessary for resolving the issues, including Barash's deposition, have been presented to this Court. *Id.*

We review de novo the trial court's decision on a motion for summary disposition. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). Sattam moved for summary disposition under MCR 2.116(C)(8) and (10). Because the court considered documents that went beyond the pleadings, such as Barash's affidavit attached to the response and countermotion for summary disposition, we review the motion as one for summary disposition under MCR 2.116(C)(10). See *id*. at 160, 163 n 5.

A motion for summary disposition under MCR 2.116(C)(10) tests the factual sufficiency of the plaintiff's claim. *Id*. at 160. Summary disposition is proper when, after considering all evidence in the light most favorable to the party opposing the motion, the court determines there is no genuine issue of material fact. *Id*. " 'A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ.' " *Id*. (citation omitted). We review any questions of law de novo. See *Rakestraw v Gen Dynamics Land Sys, Inc*, 469 Mich 220, 224; 666 NW2d 199 (2003). "The trial court appropriately grants summary disposition to the opposing party under MCR 2.116(I)(2) when it appears to the court that the opposing party, rather than the moving party, is entitled to judgment as a matter of law." *BC Tile & Marble Co, Inc v Multi Bldg Co, Inc*, 288 Mich App 576, 590; 794 NW2d 76 (2010) (quotation marks and citation omitted).

We review de novo a trial court's decision on a motion for summary disposition in a declaratory action. *Van Buren Charter Twp v Visteon Corp*, 319 Mich App 538, 542; 904 NW2d 192 (2017). But we review a trial court's decision on a request for declaratory relief for an abuse of discretion. *Warren City Council v Buffa*, 346 Mich App 528, 539; 12 NW3d 681 (2023). An abuse of discretion occurs when the trial court's decision falls outside of the range of reasonable and principled outcomes. *Maldonado v Ford Motor Co*, 476 Mich 372, 388; 719 NW2d 809 (2006).

This Court must analyze portions of VSP's and BYH's operating agreements, which we review de novo. *Patel v FisherBroyles*, *LLP*, 344 Mich App 264, 271; 1 NW3d 308 (2022). Contracts should generally be enforced as written. *Hunt v Drielick*, 496 Mich 366, 376; 852 NW2d 562 (2014). "This Court's goal in interpreting a contract is always to ascertain and give effect to the intent of the parties as reflected in the plain language of the contract." *Patel*, 344 Mich App at 271-272. " 'The words of a contract are interpreted according to their plain and ordinary meaning, and this Court gives effect to every word, phrase, and clause while avoiding interpretations that would render any part of the document surplusage or nugatory.' " *Id*. at 272 (citation omitted). When a contract provision is subject to "irreconcilably conflicting interpretations," it will be considered ambiguous, and the ambiguity will present a question for the trier of fact. *Id*.

## 2. ANALYSIS UNDER VSP'S OPERATING AGREEMENT

Under the Michigan Limited Liability Company Act, MCL 450.4101 *et seq*., an LLC is a company "that is an unincorporated membership organization formed under this act." MCL 450.4102(2)(k). The term "membership interest" is defined to mean "a member's rights in the

limited liability company, including, but not limited to, any right to receive distributions of the limited liability company's assets and any right to vote or participate in management." MCL 450.4102(2)(q). A "member" is defined as someone admitted as a member in the LLC as outlined in MCL 450.4501. MCL 450.4102(2)(p). The term "operating agreement" is defined to mean "a written agreement by the member of a limited liability company that has 1 member, or between all of the members of a limited liability company that has more than 1 member, pertaining to the affairs of the limited liability company and the conduct of its business." MCL 450.4102(2)(r).

Regarding the admission of a member in an LLC after its formation, MCL 450.4501(2) provides as follows:

> (2) A person may be admitted as a member of a limited liability company after the formation of the limited liability company in any of the following ways:
>
> (a) If the person is acquiring a membership interest directly from the limited liability company, *by complying with the provisions of an operating agreement prescribing the requirements for admission* or, in the absence of provisions prescribing the requirements for admission in an operating agreement, upon the unanimous vote of the members entitled to vote.
>
> (b) If the person is an assignee of a membership interest, as provided in [MCL 450.4506].
>
> (c) If the person is becoming a member of a surviving limited liability company as the result of a merger or conversion approved under this act, as provided in the plan of merger or plan of conversion. [Emphasis added.[4]]

This case does not involve an assignment under MCL 450.4506 or a surviving LLC, so MCL 450.4501(2)(a) governs in this situation. Under that provision, a person obtains a membership interest by complying with the operating agreement governing admission. See MCL 450.4501(2)(a).

Sattam did not argue in the trial court, and does not contend on appeal, that the provisions of VSP's operating agreement were ambiguous, so they must be enforced as written. See *Hunt*, 496 Mich at 376. The key provisions of VSP's operating agreement provided as follows:

> **8.5    Transferee's Rights.** Notwithstanding the voluntary or involuntary sale, transfer, assignment, encumbrance, pledge, conveyance, or other disposition

---

[4] Another provision of the statute, MCL 450.4501(1)(b)(*ii*), provides that a person may be admitted as a member of an LLC in relation to the formation of the company when, among other things, the operating agreement does not include admission requirements and "[t]he person's status as a member is reflected in the records, tax filings, or other written statements of the limited liability company." This provision does not apply in this case because Sattam alleges he became a member of VSP years after the company was formed and because the operating agreement *does* include admission requirements.

of part or all of any Shares, whether or not in compliance with the provisions of this Article 8, under no circumstances shall any actual or purported purchaser, assignee, transferee, Qualified Purchaser, Successor, creditor, or other party (collectively "Transferee") be admitted as a substitute Member except in accordance with Section 8.6. No Transferee shall have any right to vote on or participate in the affairs of the Company, to receive any Company information or an accounting of Company funds or affairs unless and until the same shall qualify and be admitted as a Member in accordance with Section 8.6. A Qualified Purchaser and Member Successor who is not admitted as a Member, shall be entitled only to the allocations and distributions provided to such Shares in accordance with this Operating Agreement.

**8.6    Admission as Member.**    A Qualified Purchaser or Member Successor (collectively "Qualified Transferee") shall be admitted to the Company as a substitute Member only upon satisfaction of all of the following terms and conditions:

**8.6.1**    Members holding a majority of the outstanding Shares in the Company consent to the Qualified Transferee's admission as a Member.

Accordingly, under the language of § 8.5, a transferee of shares in VSP does not become an admitted member of VSP permitted to vote on or participate in the company's affairs simply by purchasing shares in the company. Rather, that individual may only be admitted as a substitute member in accordance with § 8.6. According to § 8.6, a qualified transferee becomes an admitted member only after satisfying certain terms and conditions, which include that the members holding a majority of the shares in the company consent to that individual's admission as a member. Finally, § 8.1 specifies that any disposition of shares that is contrary to the operating agreement is considered void.

On appeal, Sattam does not challenge whether BYH was the "member holding a majority of the shares in the company" for purposes of his admission as a member of VSP. In other words, once the shares were sold to Sattam, BYH became the only existing member of VSP. And while the parties dispute whether Yousef later sold his interest in BYH to Barash in 2019, there is no dispute that when Sattam purchased his shares in VSP in 2018, Barash and Yousef remained equal members and managers of BYH. Instead, Sattam emphasizes on appeal that Yousef signed the approval of assignment portion of the purchase agreement, which referred to the "Assignment of Membership Interest pursuant to the operating agreement." But the critical fact is not whether Yousef signed the document, but whether Barash also had to sign the document.

The purchase agreement included a signature line for both Barash and Yousef as members of BYH, indicating that there was an understanding that both men would need to sign on behalf of BYH. This understanding is consistent with the language of VSP's operating agreement, which required that members in VSP holding a majority of the outstanding shares of the company consent to the admission of a member.

Whether Yousef had authority to independently bind BYH depends on the language of BYH's operating agreement, which stated:

**6.2    Member Voting; Consent.**   Notwithstanding anything contained in the Act to the contrary, for purposes of voting and acting by written consent on any matter submitted to the Members, whether or not required by the Act or this Operating Agreement, each Member shall have the right to vote one (1) vote for each Share owned by such Member.  Notwithstanding anything contained in the Act to the contrary, unless a greater vote is expressly provided for in this Operating Agreement, all approvals, consents, decisions, actions, and determinations by the Members, whether or not required by or provided for under this Operating Agreement or the Act, shall be made on, and require approval by, the affirmative vote of the Members holding a majority of all outstanding Shares in the Company.

\* \* \*

**6.3    Restrictions on Members.**   No Member shall engage in any act or cause the Company to engage in any act or otherwise operate in any manner that contravenes this Operating Agreement; nor shall any Member who is not also a Manager engage in any act or transaction on behalf of or otherwise binding the Company.

Accordingly, under the language of BYH's operating agreement, each member in the company has the right to vote one vote per share owned by the member, and all votes require approval by the affirmative vote of the members holding a majority of shares.  Otherwise, § 6.3 prohibits a member from engaging in any act that violates the terms of the operating agreement. Because Barash and Yousef were equal members of BYH at the time that Sattam purchased the shares of the remaining members, neither held a majority interest in BYH.  Therefore, § 6.2 of BYH's operating agreement required both members to approve Sattam's admission as a member in VSP.

Sattam argues that he had no way of knowing about the terms of BYH's operating agreement, but he fails to cite any legal basis for why his knowledge of BYH's corporate structure is relevant to whether he was admitted as a member of VSP under its operating agreement. Moreover, Sattam's argument is undermined by the purchase agreement, which contains a signature line for *both* Barash and Yousef.  The presence of the signature line supports that the parties to the transaction understood that Barash and Yousef would both sign on behalf of BYH. Sattam's belief that the document was completely executed even though Barash's signature line was left blank was unreasonable and irrelevant to the language of the operating agreement.

Sattam suggests that Barash and Yousef ratified his conduct by allowing him to participate as a member of VSP for several years.  But as discussed later, Sattam did not attach any documents to his motion for summary disposition to support this position.  Moreover, the language of VSP's operating agreement did not contain any exceptions allowing a party to become a member through a course of conduct.  Instead, under the Michigan Limited Liability Company Act, the language of the operating agreement controlled, MCL 450.4501(2)(a), and that document required Barash to approve Sattam's admission as a member in VSP.

### 3.  ANALYSIS UNDER APPARENT OR ACTUAL AUTHORITY

Under Michigan law, a principal is bound by an agent's actions taken with actual or apparent authority. *James v Alberts*, 464 Mich 12, 15; 626 NW2d 158 (2001). To determine whether an agency relationship exists, we will consider the parties' relations as they existed under their acts or their agreements. *Wigfall v Detroit*, 504 Mich 330, 340; 934 NW2d 760 (2019). The Michigan Supreme Court has explained "that in its broadest sense agency includes every relation in which one person acts for or represents another by his authority." *Id*. (quotation marks and citation omitted).

An agency relationship exists when the principal manifests that the agent may act on the principal's behalf. *Meretta v Peach*, 195 Mich App 695, 697; 491 NW2d 278 (1992). The legal standard is whether the principal has a right to control the agent's actions. *Id*. The principal's authority may be either actual or apparent. *Id*. at 698. As for actual authority, it may be either express or implied. *Id*. "Implied authority is the authority which an agent believes he possesses," which includes the authority "to do business in the principal's behalf in accordance with the general custom, usage and procedures in that business." *Id*. "However, the principal must have notice that the customs, usages and procedures exist." *Id*.

As our Supreme Court has explained, "[i]mplied authority consists of the power to do all things which are reasonably necessary or proper to efficiently carry into effect the power conferred, unless it be a thing specifically forbidden." *Wigfall*, 504 Mich at 340 (quotation marks and citation omitted). This will depend on the alleged agent's acts and conduct that the principal knows about and acquiesces in. *Id*. at 340-341. " 'Whether the act in question is within the authority granted depends upon the act's usual or necessary connection to accomplishing the purpose of the agency.' " *Id*. at 341 (citation omitted).

Regarding express or apparent authority, the authority "may arise when acts and appearances lead a third person reasonably to believe that an agency relationship exists." *Meretta*, 195 Mich App at 698-699. "Apparent authority must be traceable to the principal and cannot be established by the acts and conduct of the agent." *Id*. at 699. The court must examine the surrounding facts and circumstances to determine whether apparent authority existed. *Id*. This Court has explained that a form of estoppel exists

> [w]henever a principal has placed an agent in such a situation that a person of ordinary prudence, conversant with business usages and the nature of the particular business, is justified in assuming that such agent is authorized to perform in behalf of the principal the particular act, and such particular act has been performed . . . . [*Id*. at 699-700 (quotation marks and citation omitted).]

Finally, "[e]ven if unauthorized, acts of an agent are ratified by the principal if the latter accepts the benefits of the unauthorized acts with knowledge of the material facts." *Hutton v Roberts*, 182 Mich App 153, 162; 451 NW2d 536 (1989).

In this case, Sattam cannot establish that Yousef had either implied authority or apparent authority because there is no evidence that Yousef was Barash's agent, that Barash took any actions to manifest that Yousef could act on his behalf, or that there was any act that would lead a third party to reasonably believe that Yousef was acting as Barash's agent. Sattam did not support his

apparent-authority argument in his summary disposition briefing with any evidence in the record, and he failed to raise the implied authority I argument at all in the trial court.

On appeal, Sattam relies solely on evidence that he attached for the first time to his motion for reconsideration, which included tax and loan documents, as well as Barash's deposition transcript from a related case that is not involved in this appeal. The trial court had "full discretion to decline to consider evidence presented with a motion for reconsideration that could have been presented the first time the issue was argued." *Yachcik v Yachcik*, 319 Mich App 24, 42; 900 NW2d 113 (2017) (quotation marks and citation omitted).

Starting with Barash's deposition transcript, Sattam did not participate in discovery in this case and took no steps to depose Barash during the discovery time frame. He provides no explanation on appeal for why he did not depose Barash during discovery. He did not include the deposition transcript as an exhibit to his motion for summary disposition or reply brief. Therefore, the trial court did not abuse its discretion by declining to consider this new evidence. See *id*. Even if the court had considered the deposition transcript, Barash acknowledged that he did not object to the sale of 60% of the interest in VSP, explaining that he assumed the shares would be split evenly among himself, Yousef, and Sattam. But Barash did not testify that he authorized Yousef to sign on his behalf for BYH or that he ever agreed to the sale without his signature.

Sattam also attached to his motion a series of loan documents from early 2019 to support that Barash and Yousef sanctioned his membership in VSP by having him serve as a loan guarantor. But Sattam failed to explain in the trial court or on appeal why he did not include these documents, which are from years before this lawsuit was filed, as exhibits to his motion for summary disposition. Therefore, the court did not abuse its discretion by refusing to consider these documents on reconsideration. See *id*. Even if the court had considered these documents, the loan documents do not create a genuine issue of material fact on implied authority or apparent authority because they do not demonstrate that there were any acts or appearances that would lead a third person reasonably to believe that Yousef was acting as Barash's agent when he signed off on the sale of VSP shares to Sattam.[5]

In summary, Sattam has presented no evidence that would create a genuine issue of material fact on whether Yousef had any authority—whether implied or apparent—on Barash's behalf to sign off on Sattam's admission as a member in VSP and bind BYH. For these reasons, the trial court did not err by denying Sattam's motion for summary disposition or by granting summary disposition in favor of Barash, BYH, and VSP under MCR 2.116(I)(2) on the issue of Sattam's membership status in VSP.

## B. STANDING

---

[5] In his reply brief, Sattam also mentions that he is listed as a 60% shareholder on the parties' tax returns. But this Court rejected Sattam's attempts to expand the record in this case to include the tax records, which were not attached to his original motion or motion for reconsideration. *Value Save Prop, LLC v Sattam*, unpublished order of the Court of Appeals, entered October 19, 2023 (Docket No. 366285).

Sattam also argues that the trial court erred by finding that Barash, BYH, and VSP had standing to file a declaratory-judgment action. We disagree.

## 1. PRESERVATION AND STANDARD OF REVIEW

Because Sattam raised this issue in his motion for summary disposition, it is preserved for appellate review. See *Glasker-Davis*, 333 Mich App at 227-228. Although the trial court did not specify whether it reviewed this issue under MCR 2.116(C)(8) or (10),[6] the court's review was limited to the pleadings, meaning that MCR 2.116(C)(8) is the more applicable standard. See *El-Khalil*, 504 Mich at 160, 163 n 5. An MCR 2.116(C)(8) motion tests the legal sufficiency of the complaint based on the pleadings alone and examines whether the nonmovant has failed to state a claim on which relief may be granted. *Black v Cook*, 346 Mich App 121, 127; 11 NW3d 563 (2023). We consider all well-pleaded factual allegations as true and construe them in the light most favorable to the nonmovant. *Id*. Summary disposition is granted "when the claim is so clearly unenforceable as a matter of law that no factual development could possibly justify a right of recovery." *Id*. (quotation marks and citation omitted). Additionally, we review de novo whether a party has standing to sue. *Sterling Heights Pain Mgt, PLC v Farm Bureau Gen Ins Co of Mich*, 335 Mich App 245, 249 n 1; 966 NW2d 456 (2020).

## 2. ANALYSIS

A plaintiff must have standing before the court can exercise jurisdiction over his or her claim. *Miller v Allstate Ins Co*, 481 Mich 601, 606; 751 NW2d 463 (2008). Standing generally refers to a party's right to invoke the power of the court initially to adjudicate his or her claimed injury in fact. *Saugatuck Dunes Coastal Alliance v Saugatuck Twp*, 509 Mich 561, 592; 983 NW2d 798 (2022). "To be aggrieved, one must have some interest of a pecuniary nature in the outcome of the case, and not a mere possibility arising from some unknown and future contingency." *Id*. at 592-593 (quotation marks and citations omitted). Three elements establish standing to sue:

> First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. [*Ammex, Inc v Dep't of Treasury*, 272 Mich App 486, 492; 726 NW2d 755 (2006) (quotation marks and citations omitted; alterations in original).]

Regarding claims for declaratory relief, MCR 2.605(A)(1) provides, "In a case of actual controversy within its jurisdiction, a Michigan court of record may declare the rights and other

---

[6] Although Sattam also moved for summary disposition under MCR 2.116(C)(5), we do not apply this subrule because the issue involves standing and not legal capacity to sue. *Sakorafos v Charter Twp of Lyon*, 349 Mich App 176, 185; 27 NW3d 329 (2023).

legal relations of an interested party seeking a declaratory judgment, whether or not other relief is or could be sought or granted." The Michigan Supreme Court has held that "whenever a litigant meets the requirements of MCR 2.605, it is sufficient to establish standing to seek a declaratory judgment." *Lansing Sch Ed Ass'n v Lansing Bd of Ed*, 487 Mich 349, 372; 792 NW2d 686 (2010).

MCR 2.605 incorporates the doctrines of standing, ripeness, and mootness. *League of Women Voters of Mich v Secretary of State*, 506 Mich 561, 586 n 31; 957 NW2d 731 (2020). Regarding the concept of an actual controversy, "[a]n actual controversy exists when a declaratory judgment is needed to guide a party's future conduct in order to preserve that party's legal rights." *Id*. at 586. The controversy must be a present one, rather than an anticipated or hypothetical controversy. *Id*. In other words, an actual controversy exists when the plaintiffs plead and establish facts demonstrating "an adverse interest necessitating the sharpening of the issues raised." *Int'l Union, United Auto, Aerospace & Agricultural Implement Workers of America v Central Mich Univ Trustees*, 295 Mich App 486, 495; 815 NW2d 132 (2012) (*UAW*) (quotation marks and citation omitted). Finally, a declaratory claim must be premised on a claim for substantive relief—not an abstract claim of a right without factual context. *Taxpayers Allied for Constitutional Taxation v Wayne Co*, 450 Mich 119, 128; 537 NW2d 596 (1995).

In their complaint for declaratory relief, Barash, VSP, and BYH asked the court to enter a declaratory-judgment ruling that: (1) Sattam was a transferee rather than an admitted member of VSP, (2) Barash is the manager of VSP, and (3) all Sattam's actions as purported manager of VSP be held void. The trial court concluded that an actual controversy existed to decide Sattam's rights in VSP for purposes of every count in the complaint, with a limited exception regarding VSI's right to occupy the Livernois Property, which is not challenged as part of this appeal. When the trial court decided this case, there were several other pending actions relating to the same parties and involving issues relating to Sattam's ownership in VSP, which demonstrated that there were present controversy between the parties. The parties disagreed over Sattam's authority to remove Barash as the manager of the company and Sattam's subsequent actions in relation to the tenants of the Livernois Property. Because there was ongoing confusion over whether Sattam was a majority member and manager of VSP, which was affecting the parties' ability to operate the Livernois Property, a declaratory judgment was needed to guide the parties' future conduct and preserve the legal rights of the parties. See *League of Women Voters*, 506 Mich at 586. Accordingly, the trial court did not err by finding that Barash, VSP, and BYH had standing to bring an action for declaratory relief.[7]

### III. DOCKET NO. 369975

### A. STANDING

---

[7] We note that Sattam raises for the first time on appeal in connection with this case the issue whether Barash, VSP, and BYH should be judicially estopped from taking any type of position contrary to how Barash and BYH conducted business for over four years. We decline to consider this unpreserved issue, see *Glasker-Davis*, 333 Mich App at 227-228, particularly when the factual record on the issue was not fully developed, see *Tolas Oil*, 347 Mich App at 289-290.

-14-

In Docket No. 369975, Sattam first argues the trial court erred by finding that Sattam was not a member of BYH II, and therefore, lacked standing to sue. We disagree.

### 1. PRESERVATION AND STANDARD OF REVIEW

Because Yousef, Barash, and BYH II raised this issue in their motions for summary disposition, it is preserved for appellate review. See *Glasker-Davis*, 333 Mich App at 227-228. Although the motions for summary disposition were filed under MCR 2.116(C)(8) and (10), we review the issue under MCR 2.116(C)(10) because the trial court considered affidavits that were outside the scope of the pleadings. See *El-Khalil*, 504 Mich at 160, 163 n 5. As previously stated, we review de novo whether a party has standing to sue. *Sterling Heights Pain Mgt*, 335 Mich App at 249 n 1.

### 2. ANALYSIS

As noted earlier, a plaintiff must have standing before the court can exercise jurisdiction over his or her claim. *Miller*, 481 Mich at 606. The doctrine of standing generally refers to a party's right to invoke the power of the court initially to adjudicate his or her claimed injury in fact. *Saugatuck Dunes*, 509 Mich at 592. "Generally, a plaintiff shows a personal stake in a lawsuit by demonstrating injury to the plaintiff or the plaintiff's property." *Taylor v Blue Cross/Blue Shield of Mich*, 205 Mich App 644, 656; 517 NW2d 864 (1994).

Again, MCL 450.4501(1) governs admission of a member when the company is formed while MCL 450.4501(2) governs subsequent admission as a member. There is no indication that Sattam was a member's assignee or was becoming a member of a surviving LLC, so MCL 450.4501(2)(a) applies in this case and requires compliance with the provisions of BYH II's operating agreement.

There is no dispute that Yousef and Barash were the only members and managers of BYH II when it was formed in 2006. The company has an operating agreement, executed in 2006, which contains a merger clause indicating that the operating agreement is fully integrated. Section 2.4 of the operating agreement contemplates that additional shares of BYH II may be issued, and the purchaser may become a member of the company upon the execution of an amendment to the operating agreement in which the purchaser agrees to be bound by the terms and provisions of the operating agreement and upon the satisfaction of any other conditions of membership required by BYH II.

Article 8 of BYH II's operating agreement governs the transfer of shares in the company. Section 8.1 specifies that any sale of shares of the company is void if it is not in compliance with the operating agreement. Section 8.2 of the operating agreement outlines a detailed process for selling shares pursuant to a bona fide offer, in which the selling member must give the company notice and allow the company a 30-day exclusive option to purchase the shares before the bona fide purchaser. Sattam has presented no evidence that this process was followed in this case.

Regarding admission as a member, § 8.5 clarifies that a transferee may only be admitted as a substitute member in accordance with § 8.6. Otherwise, the transferee has no right to vote on

-15-

or participate in the company's affairs.  Section 8.6 outlines the requirements for admission as a member as follows:

> **8.6**     **Admission as Member.**     A Qualified Purchaser or     Member Successor (collectively "Qualified Transferee") shall be admitted to the Company as a substitute Member only upon satisfaction of all of the following terms and conditions:
>
> **8.6.1**   Members holding a majority of the outstanding Shares in the Company consent to the Qualified Transferee's admission as a Member.
>
> **8.6.2**   The Qualified Transferee shall furnish to the Company the Qualified Transferee's taxpayer identification number and any and all other information necessary or appropriate for the Company to file all required federal and state tax returns.
>
> **8.6.3**   The Qualified Transferee shall execute and deliver to the Company an agreement, in form and substance satisfactory to the Company, by which the Qualified Transferee agrees to be bound by all of the terms and provisions of this Operating Agreement and agrees that the Shares acquired by the Qualified Transferee shall be subject to all of the transfer restrictions under Article 8.
>
> **8.6.4**   The Selling Member or the Qualified Transferee shall reimburse the Company for all reasonable costs and expenses the Company incurs in connection with the transfer of the Shares and in obtaining compliance with the terms and provisions of this Operating Agreement.

In this case, Sattam admitted outright that he had no written agreements with BYH II and admitted by failure to respond to discovery requests that he never purchased an interest in BYH II. Sattam provides no details about the alleged sale, such as when it occurred or what he paid as a purchase price, therefore failing to establish that any transfer occurred under § 8.2 of BYH II's operating agreement.

Nor did Sattam present any evidence to establish that he was admitted as a member of BYH II under § 8.6 of BYH II's operating agreement.  There was no amendment to the operating agreement issuing shares of the company to Sattam.  There was no contemporaneous evidence that Barash and Yousef consented to the admission of Sattam as a member, that he furnished tax information to the company, that he executed an agreement by which he agreed to be bound by the operating agreement, or that he reimbursed BYH II all reasonable costs and expenses in connection with the transfer.

Sattam argues that he "performed under the Operating Agreement that was signed by *all parties*."  But Sattam never presented any version of the operating agreement signed by him as a member or any other document establishing that any membership interest in BYH II was transferred to him.  In fact, he admitted during discovery that no such written agreement was in his possession.  To the extent he maintained that Barash and BYH II held all the corporate documents, Sattam was obligated to request the documents needed to support his claim in

discovery and attach the documents establishing a genuine issue of material fact to his responses to the motions for summary disposition. See MCR 2.116(G)(4).

To establish that he had a membership interest in BYH II, Sattam relies on a 2018 Schedule K-1 tax form, in which Sattam is identified as a 25% partner in BYH II as a "[g]eneral partner or LLC member-manager" and a "[d]omestic partner." The Schedule K-1 indicates that Sattam was paid royalties during the tax year. Also included was a Partner's Adjusted Basis Worksheet for 2018, which indicated that Sattam had liabilities from BYH II during 2018. But the tax forms were not proof of membership because they do not establish that Sattam was admitted as a member of BYH II in accordance with the provisions of the operating agreement. MCL 450.4501(2)(a).[8]

Sattam also relies on MCL 450.2489, a provision of the Nonprofit Corporation Act, MCL 450.2101 *et seq*., to support that he had standing to sue Barash and Yousef for "illegal, fraudulent, or willfully unfair and oppressive" acts. See MCL 450.2489. There is no dispute that BYH II is an LLC—not a nonprofit corporation. As discussed earlier, LLCs are unique corporate structures governed by a distinct statutory scheme. Accordingly, MCL 450.2489 does not apply in this scenario.

The same is true for MCL 450.1491a, which is a definitions section of the Business Corporation Act (BCA), MCL 450.1101 et *seq*. The statute defines "shareholder" to mean "a record or beneficial owner of shares and includes a beneficial owner whose shares are held in a voting trust or held by a nominee on the owner's behalf." MCL 450.1491a(b). Sattam cites this statute in connection with a broader argument that he had the right to file a lawsuit as a direct shareholder action. Sattam's argument lacks merit because he improperly equates an LLC with a corporation. As discussed earlier, the Michigan Limited Liability Company Act is a separate statutory scheme governing LLCs and contains its own definition of a "member." See MCL 450.4102(2)(p). Sattam does not cite any legal basis under the Michigan Limited Liability Company Act allowing him to file a direct shareholder action.

In short, the trial court did not err by finding that Sattam lacked standing to bring any of his claims in his complaint, which were premised on his alleged membership interest. We therefore decline to address the remaining issues raised in Sattam's brief on appeal regarding the merits of his claims or the issue of mootness.[9]

---

[8] MCL 450.4501(1) does not apply because Sattam was not admitted as a member of BYH II in connection with the formation of the company. Moreover, the operating agreement does contain the requirements for admission. So the other documents that Sattam relies on, such as the tax records and loan documents, would not support that he became a member of the company pursuant to the operating agreement, under MCL 450.4501(2)(a).

[9] We note that even if the transfer of venue was improper in this case, Sattam cannot obtain relief on that basis because improper venue is not a basis for disturbing a final judgment. See MCL 600.1645 ("No order, judgment, or decree shall be void or voidable solely on the ground that there was improper venue"). We therefore reject Sattam's venue argument.

## IV. DOCKET NO. 370472

### A. RES JUDICATA

In Docket No. 370472,[10] Sattam and VSP first argue the trial court erred by dismissing this case under the doctrine of res judicata. We disagree.

### 1. PRESERVATION AND STANDARD OF REVIEW

Because Barash and BYH raised this issue in their motion for summary disposition, it is preserved for appellate review. See *Glasker-Davis*, 333 Mich App at 227-228. We review de novo whether res judicata bars a subsequent action. *Adair v Michigan*, 470 Mich 105, 119; 680 NW2d 386 (2004). MCR 2.116(C)(7) applies to legal defenses such as prior judgment. See MCR 2.116(C)(7); *Garrett v Washington*, 314 Mich App 436, 441; 886 NW2d 762 (2016). " 'In determining whether summary disposition under MCR 2.116(C)(7) is appropriate, a court considers all documentary evidence submitted by the parties, accepting as true the contents of the complaint unless affidavits or other appropriate documents specifically contradict them.' " *Garrett*, 314 Mich App at 441 (citation omitted). The evidence should be considered in the light most favorable to the nonmovant, and when no factual dispute exists, whether a claim is barred under res judicata is a question of law for the court to determine. *RDM Holdings, LTD v Continental Plastics Co*, 281 Mich App 678, 687; 762 NW2d 529 (2008).

### 2. ANALYSIS

Res judicata is a doctrine designed to ensure the finality of litigation and the reliance on prior adjudication of issues, among other things. *Garrett*, 314 Mich App at 441. The party asserting res judicata has the burden to prove it applies here. *Id*. The elements of res judicata include: "(1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, or could have been, resolved in the first." *Id*. (quotation marks and citation omitted). This Court has applied the doctrine of res judicata broadly to include not only claims that were already litigated but every claim arising from the same transaction that the parties exercising reasonable diligence could have raised but failed to do so in the prior action. *C-Spine Orthopedics, PLLC v Progressive Mich Ins Co*, 346 Mich App 197, 203; 12 NW3d 20 (2023).

> In Michigan, the doctrine of res judicata applies, except in special cases, in a
> subsequent action between the same parties and not only to points upon which the

---

[10] As an initial matter, in their joint brief on appeal, Yousef, Barash, and BYH challenged this Court's jurisdiction because Sattam lacked standing to appeal. We reject this argument because it relates to the merits of Sattam's claims rather than this Court's subject-matter jurisdiction. As our Supreme Court has recognized, standing to file a lawsuit and standing to appeal are distinct concepts. *Federated Ins Co v Oakland Co Rd Comm*, 475 Mich 286, 291-292; 715 NW2d 846 (2006). All that is required to invoke this Court's jurisdiction under MCR 7.203(A)(1) is that Sattam was a party in the case and was aggrieved from the order appealed. Both jurisdictional requirements are met here.

court was actually required by the parties to form an opinion and pronounce a judgment, but to every point which properly belonged to the subject of litigation, and which the parties, exercising reasonable diligence, might have brought forward at the time. [*Id*. (quotation marks and citation omitted).]

Res judicata applies to cases that the court decided previously through a grant of summary disposition. *Id*. at 204.

The question here is whether Sattam and VSP were precluded under the doctrine of res judicata from filing this action because of the disposition of the lawsuit in Docket No. 366285, which we will refer to as the first case. The first case was decided on the merits. As discussed earlier, the trial court ruled that Sattam was not admitted as a member of VSP and therefore Barash, VSP, and BYH were entitled to declaratory relief. The court entered a declaratory judgment on all three counts raised in the complaint. The order was a final order and closed the case. See MCR 7.202(6)(a)(*i*); *C-Spine*, 346 Mich App at 204. Therefore, the first case was decided on the merits.

Additionally, both cases involved the same parties or their privies. " 'To be in privity is to be so identified in interest with another party that the first litigant represents the same legal right that the later litigant is trying to assert.' " *Mecosta Co Med Ctr v Metro Group Prop & Cas Ins Co*, 509 Mich 276, 283; 983 NW2d 401 (2022) (citation omitted). In other words, the parties must have "such an identification of interest of one person with another as to represent the same legal right." *Id*. at 283-284 (quotation marks and citation omitted). The first case included VSP, BYH, and Barash as plaintiffs and Sattam as a defendant. The instant case included VSP and Sattam as plaintiffs and Barash, BYH, and Yousef as defendants.

The critical question is whether the presence of Yousef affected whether the case involved the same parties or their privies. We conclude that Yousef was in privity with Barash and BYH such that they represented and protected his legal rights in the first case. Barash, BYH, and Yousef had the same interests in relation to these two lawsuits: to protect VSP from Sattam's alleged interference. In this case, Yousef moved for summary disposition on the basis that Sattam unlawfully took over VSP despite having no membership interest, establishing that Yousef's position on the issue was the same as the position taken by Barash and BYH. Therefore, although Yousef apparently signed for Sattam to become a member in VSP, he took the position that the transaction was never perfected because Sattam never paid the purchase price. Accordingly, for purposes of the issues raised in both lawsuits, the interests of Barash and Yousef were aligned.

Yousef's interests were also aligned with BYH through his ownership interest in the company. See *Peterson Novelties, Inc v City of Berkley*, 259 Mich App 1, 13; 672 NW2d 351 (2003). Although a factual dispute exists on whether Yousef continued to be an owner in BYH at the time these lawsuits were filed, there is no dispute that Yousef was a 50% owner of BYH at the time of the alleged membership transfer to Sattam. Sattam's allegations against Yousef did not differ materially from those he raised against Barash and BYH. And even if Yousef *did* transfer his 50% interest in BYH in 2019, there is no indication in the record that Yousef's interests were no longer aligned with those of Barash and BYH. For these reasons, the lawsuits involved the same parties or their privies.

Additionally, the matter in this case was or could have been resolved in the first case. Our Supreme Court has clarified that the operative question is whether the claims in the latter case arose as part of the same transaction as the claims in the earlier case. *Adair*, 470 Mich at 125. This involves a review of whether the facts of the cases are related in terms of time, space, motivation, or origin, and whether they would form a convenient trial unit. *Id*. An examination of the facts in both cases reveals that they arose from the same transaction and are related in terms of time, space, motivation, and origin. Both lawsuits arise from Sattam's alleged purchase of a 60% membership interest in VSP and the subsequent actions taken by the parties to the case that were allegedly in violation of the operating agreement. Both cases therefore involved the same transaction and would form a convenient trial unit.

Sattam and VSP raise two arguments on this issue. First, they argue that because they filed this case first, it could not be barred by res judicata. But the doctrine of res judicata as interpreted by our Supreme Court relates to the *adjudication date*, not the filing date. There is no requirement that the first case to be adjudicated must also be the first case filed. Sattam's reliance on *Ternes Steel Co v Ladney*, 364 Mich 614; 111 NW2d 859 (1961), is unavailing. In *Ternes Steel*, the Michigan Supreme Court held as follows:

> We conclude that when a litigant's right to affirmative relief is independent of a cause of action asserted against him and it is relied upon only as a defense to that action, he is barred from seeking affirmative relief thereon in a subsequent proceeding. But if he does not rely upon his claim as a defense to the first action, or as a counterclaim thereto, he is not barred from subsequently maintaining his action for affirmative relief in an independent suit. [*Id*. at 619.]

This doctrine does not apply in this case because Sattam's right to relief was not independent of the cause of action asserted against him in the first case. As discussed earlier, the first case challenged Sattam's status as a member of VSP. He asserted as a defense that he was an admitted member of VSP. Although he argues on appeal that he did not assert any claims for monetary damages, he presents no legal basis for why he could not have asserted those claims for monetary damages as a counterclaim. Therefore, Sattam could have raised the claims the first case. See generally MCR 2.203.

As for Sattam and VSP's argument that the stay of enforcement of the judgment in Docket No. 366285 precluded application of res judicata in this case, the longstanding rule in Michigan is "that a judgment pending on appeal is deemed *res judicata*." *City of Troy Bldg Inspector v Hershberger*, 27 Mich App 123, 127; 183 NW2d 430 (1970). This Court has explained, "Only in a case where the second appeal itself prevents the prior judgment from being operative is the *res judicata* effect of the prior judgment inoperative." *Id*. There is no indication in this case that this appeal would prevent the prior judgment from being operative. In fact, in *City of Troy Bldg Inspector*, the prior action resulted in a judgment that was stayed pending appeal. *Id*. at 125. Nor is there any language in MCR 7.209(E)(5) to support Sattam's position on this issue. Therefore, the claims in this case were barred by res judicata, and the trial court did not err by dismissing this

lawsuit.  We therefore decline to address the issue of collateral estoppel or Sattam's alternative issues on appeal relating to standing and mootness.[11]

Affirmed.

/s/ Kathleen A. Feeney
/s/ Kristina Robinson Garrett
/s/ Mariam S. Bazzi

---

[11] As for Sattam's argument that venue should have remained in the Wayne Circuit Court, even assuming Sattam's argument has merit, once again, an improper venue is not a basis for disturbing a final judgment.  See MCL 600.1645.